RICHARD J. CARNEY AND JOHN BOGUE v. LUTHER L. HOTCHKISS.

*Acceptance of order drawn on general partner—Theory of action—Parol change of contracts.*

Where H. was the general partner in a firm called H. & Co., an order drawn on H. as "general partner," and accepted in the firm name, is to be treated as an order on and acceptance of the firm, and not an individual transaction.

When plaintiffs have finished their proof and rested their case on one theory, they cannot under claim of rebuttal put in a new and differ- ent case as a ground of recovery.

A written contract cannot be varied by proof of previous verbal arrange- ments. *A fortiori* this cannot be done when the writing expressly declares that there are no verbal agreements which apply thereto.

Error to Bay. Submitted Apr. 18. Decided Apr. 25.

ASSUMPSIT. Defendant brings error. Reversed.

*A. McDonell* for appellant.

*Hatch & Cooley* for appellees.

CAMPBELL, J. Plaintiffs sued Hotchkiss (and a special partner as to whom there was afterwards a discontinuance) for an alleged balance due for handling certain logs which had been cut and skidded by one Wilder under a special contract, which he did not further complete. The controversy was whether plaintiffs were entitled to pay according to a contract for similar work which provided larger compensation than the Wilder contract, or whether they were bound as to these particular logs to be governed by that. In the circuit court they recovered on the larger basis.

It appears that in November, 1879, Wilder made an agreement with Hotchkiss & Co. (defendant being the only general partner) to cut, deliver and run all logs from four lots of land named, for the sum of $3.40 per thousand, of which price $1.25 was to be paid as fast as logs were skidded, 75 cents when hauled to the stream, and the balance when the logs were driven into the boom limits in the Au Gres river. In November, 1880, an amount of logs, being 509,122 feet cut by Wilder, remained on the skids. On November 13, 1880, an agreement was made between plaintiffs, Hotchkiss & Co., and Wilder, whereby—as therein somewhat awkwardly expressed—plaintiffs agreed to buy of Wilder these logs which are mentioned as belonging to Hotchkiss & Co., paying therefor $1.25 a thousand,—" the intention being that Carney & Bogue shall finish the lumbering job commenced by L. F. Wilder aforesaid; and that Carney & Bogue pay the said Wilder the value of the skidding of the logs. Carney & Bogue agree to first pay L. L. Hotchkiss & Co. the amount due them by L. F. Wilder; and when the amount of balance due L. F. Wilder shall be ascertained, they will give the said Wilder their note at three months for the same."

This agreement was only to be binding in case a lumbering contract should be made for 1880-1881 between Hotchkiss & Co. and plaintiffs. Such a contract was made two

days thereafter, which provided for cutting all the timber from a large amount of lands, in lengths and manner specified, and for skidding, drawing, marking, delivering in the river and running to the boom limits all the logs which they should so cut. For this they were to be paid $4.00 per thousand, divided as follows : $1.50 as fast as skidded, $2.00 as fast as hauled and banked, and the balance of 50 cents on completion of final delivery. At the close of the contract is this sentence : "It is understood that there are no verbal agreements which apply hereto."

In January, 1881, the amounts due Wilder and Hotchkiss & Co. respectively under the first contract were settled and a note given to Wilder for the balance. The matter in difference in the present litigation is the difference in price for handling the Wilder logs between what was to have been paid under the Wilder contract, and what would be due if the price is governed by the last contract. The former price has been settled for.

The pleadings were the common counts, and the general issue with notice of set-off.

When plaintiffs opened their case they proved the two November contracts of 1880, the settlement with Wilder and the delivery of the skidded logs at their proper destination. Here they rested.

Defendant introduced testimony of the value of hauling the logs from the skids to the river, and showed the Wilder contract and the state of accounts under it, and proved a considerable amount of roads and facilities prepared by Wilder, of which plaintiffs obtained the benefit. Wilder testified to his negotiations with plaintiffs for the surrender of his contract, and informing them of the price of the work.

Defendant also introduced evidence of an order drawn on him as "general partner" by plaintiffs to the order of Seligman & Rossman for $170 on their account, which was accepted conditionally, and the conditions performed; and that this order was still held by the payees. This was ruled out apparently on the ground that it was not drawn on the

partnership. But it was addressed to "L. L. Hotchkiss, General Partner," and accepted in the firm name. Such an address indicated clearly that it was a firm and not a separate transaction, and we think it should not have been ruled out. The payees saw fit to take a qualified acceptance and made no objection or resort to the plaintiffs, and the acceptance was sufficient.

The plaintiffs were allowed in rebuttal to show conversations prior to the making of their contract of November 15th, which plaintiffs inferred meant to include the Wilder logs under the terms of the large contract. Hotchkiss denied any such understanding. There was more or less testimony bearing on the probabilities.

The charge of the court left the recovery to be had under the alleged verbal contract that the skidded logs should be delivered under the contract of November 15, 1880, if any such was made, and held that the provision against verbal arrangements, although made before the execution of this contract, did not stand in the way.

Without attempting to determine how far in the absence of written contracts there was proof of any definite arrangement, we do not think the case was open to any such inquiry. The plaintiffs had rested their case upon their rights under the written agreements, and it would be irregular to make a new case in rebuttal. But aside from this mere matter of practice we think the written contract left no room for parol evidence. The contract of November 13th was made expressly dependent on the making of a further contract, and it covered by its terms the whole Wilder contract and provided that plaintiffs should carry it out. This unless changed would have required them to do the whole work at the same price. But the contract of the 15th made a change so far as future cutting of lumber was concerned and as to that raised the price. But it did not purport to change the price as to the lumber already skidded. It cannot be supposed this was accidental, and the parties took more than usual pains to exclude any parol evidence which should change the last contract. We need not speculate on the

reasons, but there is enough in the case to indicate that in all probability the plaintiffs got some advantage by not having to pay more than $1.25 per thousand to secure all of Wilder's rights, which seem to have been more valuable, and which by the agreement of November 13 were kept alive. But however this may be the contracts are not ambiguous, and cover the case.

Judgment must be reversed with costs and new trial.

COOLEY and MARSTON, JJ. concurred.