IVINSON v. HUTTON *et al.*

(May 7, 1883.)

PAROL EVIDENCE — SATISFACTION OF MORTGAGE — CONDITIONAL CHARACTER.

1. Written agreements, unambiguous in their terms, cannot be varied or explained by parol evidence; and where a full and complete satisfaction and discharge of a mortgage is on record, evidence is inadmissible to show that it was intended to be conditional only as having been made in pursuance of an agreement which called only for a conditional satisfaction and discharge.[1]

2. The satisfaction and discharge of a mortgage is not proof of payment of the note or debt which it secures.

SENER, C. J., dissenting.

Appeal from district court, Albany county.

Bill by Edward Ivinson against Charles H. Hutton and others to foreclose a mortgage. From a decree for defendant, complainant appeals. Affirmed. On appeal to supreme court of United States, affirmed in 119 U. S. 604, and 7 Sup. Ct. Rep. 403.

Joseph M. Carey and R. Davis Carey were made defendants, on an allegation that they claimed some interest in the prop-

erty. The defendants made a joint answer, in which they set up a full satisfaction and discharge of the mortgage by Ivinson before defendants Carey acquired their interest in the property. These defendants were about to let Hutton, the owner of the land, have $10,000 on it as security, and they required that the title be cleared, and that the mortgage to Ivinson be satisfied and discharged. Thereupon Ivinson made an entry of satisfaction on the margin of the record of the mortgage, which entry is set forth in the opinion. The mortgage to Ivinson had been made to secure a note given on a settlement between Ivinson and Hutton, and at the time of the entry of satisfaction a suit was pending in the supreme court of the United States for the correction of the amount of the note for which the mortgage was given, which suit was afterwards decided in favor of Hutton, 98 U. S. 79. Pending this controversy as to the amount of the note, Ivinson and Hutton made an agreement to adjust their differences other than this controversy, the agreement of settlement containing the following language: "Provided, always, that nothing herein contained shall be construed in any wise to affect the rights of the parties hereto in said suit between them now depending in the supreme court of the United States." It was contended by Ivinson that the entry of satisfaction on the record was made in pursuance of this agreement, and hence was merely partial and conditional in its nature.

*M. C. Brown,* for appellant. *W. W. Corlett,* for appellees.

PARKS, J. This is a bill to foreclose a mortgage which has been discharged on the record according to the statute. It is not claimed that there was any error, accidental or intentional, in the discharge as it was entered on the record, nor is it sought to cancel, modify, or alter in any way said entry as made. It is as follows:

"I hereby acknowledge satisfaction in full of the debt for which this mortgage was given to secure, and hereby discharge and cancel the same this sixth day of October, 1877. E. IVINSON.

"Attest: J. W. MELDRUM, Register of Deeds."

The rule that while the discharge remains on the margin of the record it is a bar to a foreclosure, is ignored as not being applicable to this case. The theory of the complainant is that the mortgage

---

[1] See note at end of case.

Ivinson v. Hutton.

was discharged in accordance with a written agreement made between the parties on the thirty-first day of May, 1877, by which the complainant, Ivinson, agreed, for certain considerations stated in said agreement, to execute a partial and conditional discharge on the first of August following. This view of the case is clearly stated and ably argued,—in fact, the case is so well presented on both sides that if the court is not able to come to a correct conclusion it will not be the fault of the solicitors.

No discharge was executed till the sixth day of October following the agreement, and the important question in this case is not what the parties on the thirty-first day of May agreed they would do on the first day of August, but what did they really do on the sixth day of October? The agreement, marked Exhibit D, is made part of the record, and expressly and repeatedly excepts the rights of the parties depending on the result of a suit between them then undecided in the supreme court of the United States. The proper way to determine whether the discharge was made in accordance with the agreement is to compare the two writings. It is manifest, on inspection, that in the vital point in this suit they do not accord. The agreement provides for a partial, limited, and conditional discharge in order to save the mortgage as security for any sum that Ivinson might gain by a decision of the supreme court of the United States reforming the mortgage in his favor. But the discharge actually entered on the record is full, complete, and without any saving or conditional clause in it, and it does not only discharge, but it "*cancels*" —*i. e.*, annuls, blots out, destroys—the mortgage. To prove that, notwithstanding this disagreement, the rights of the complainant Ivinson, which might be established by said decision, were excepted, and saved in the discharge, parol evidence was introduced, and several witnesses were examined. This testimony was not competent, and should not have been admitted. The authorities upon this point are so numerous and familiar that I shall cite but one. In Insurance Co. v. Holzgrafe, 53 Ill. 522, the law is briefly and clearly stated as follows: "The conversations and declarations of the parties, made before or simultaneously with the writing, are not admissible in evidence. The rule that written agreements, unambiguous in their terms, are not to be

varied or explained by parol is so old and so well established, and so consonant with reason and justice, as to render any argument upon this point unnecessary. The rule may be regarded as inflexible. It has often been said by the court that a contract cannot exist partly in writing and partly in parol." But whether this evidence was properly admitted or not, it fails to make out the case of the complainant. The evidence made to sustain the case made by the bill should be as full, clear, positive, and satisfactory as if the bill were to reform the discharge as entered on the record for fraud, accident, or mistake. The effect of the proof upon the case, and the rights of the parties, would be the same. There is quite as much evidence against the theory of the complainant as for it. It is quite as likely that the discharge was made in accordance with the determination of J. M. Carey that his security for the $10,000 he proposed to loan Hutton should be free from all incumbrances as that it was made in accordance with the agreement, marked "D."

No witness was better situated to know or more likely to remember what was said and done before and at the tme of the discharge than Carey. A part of his testimony is as follows, reaffirming, in substance, what he had said before: "Question. Now state what the facts in reference to those matters so testified to by Mr. Brown. Answer. At the time mentioned I did not examine the contract in question, viz., the contract of May 31, 1877, nor any other time previous to the commencement of this suit; that at the time named I paid the amount of money to H. B. Rumsey, as a full and complete settlement of all the liabilities of the said Hutton to the said Ivinson, including the satisfaction of the mortgage and all controversies arising out of the transaction for which the mortgage and notes were given; that we would not have agreed to pay the amount of money, or any other amount, if Mr. Ivinson, both previous to the time we purchased this property, and at the time we purchased it, had not agreed that such amount would settle all of his claims and demands, of whatever kind, he had against the said Hutton; that we took every precaution to secure all the title that had ever existed in the said Hutton; that after the satisfaction of the mortgage on the record, and the satisfaction made on the record of the debt for which the mortgage was given, Mr. Brown

called my attention to a suit pending in the United States supreme court. I examined the records of the district court of Albany county, so far as it related to a certain decree in the case of Ivinson v. Hutton, from which the case in the supreme court was an appeal. I was satisfied that such decree was not a cloud upon the title which we had obtained by the said deeds of conveyance, and I so expressed myself. I was entirely satisfied with the satisfaction of the mortgage by Mr. Ivinson, and the assurance that he gave me at the time of the settlement that he intended to release the said Hutton of all claims and demands of whatever kind. Q. Are you positive that when your attention was first called to the suit in the supreme court of the United States, by Mr. Brown, and to the fact that Mr. Ivinson did not intend to include that in the settlement of the sixth of October, 1877, that you had already agreed, in behalf of yourself and R. Davis Carey, for the benefit of Mr. Hutton, and that you had already advanced the amount paid to Mr. Rumsey, and that Mr. Ivinson had already canceled and discharged on record the note and mortgage which he held against the real estate of Mr. Hutton? A. I am positive, for the simple reason that I would make a settlement on no other basis."

Carey gives the same testimony more in detail on pages 50 and 51 of the transcript, and he repeats it in some form three or four times during his examination. The testimony of Downey and Hutton is substantially the same. Downey's, on pages 69, 70, and 71 of the transcript, is clear and positive. A part of it is as follows:

"Question. Have you any knowledge in reference to any settlement made between the complainant, Edward Ivinson, and the defendant Charles H. Hutton, at Laramie City, on the sixth day of October, 1877? Answer. I was present at a settlement which was made in the clerk's office at the time, made by the complainant, Mr. Ivinson, Mr. H. B. Rumsey, Mr. Hutton, the defendant, and J. M. Carey, also one of the defendants. Q. Now state all the facts within your knowledge in reference to that settlement. A. Mr. Carey was making the settlement for Mr. Hutton. He had agreed to advance to Mr. Hutton a sufficient amount of money to settle the claim against his ranches. Don't know the amount of money he paid in that settlement. I know he was very anxious to have a full understanding as

to what claims, if any, Mr. Ivinson, or any one else, had against certain real estate of Mr. Hutton, which he subsequently bought of Mr. Hutton. I heard Mr. Carey ask Mr. Meldrum, the then register of deeds of Albany county, to examine the record and let him know just what liens of any kind existed against Mr. Hutton and his land. Mr. Meldrum referred him to a mortgage of Charles H. Hutton to Ed. Ivinson, dated twelfth April, 1873, given to secure note of $13,-582.54. He also referred him to a number of judgments against Mr. Hutton in favor of other parties. Judge Carey sat down at the clerk's office and commenced figuring. I heard him ask Mr. Meldrum, after this showing that I have referred to, if these were all the claims against Mr. Hutton, and Mr. Meldrum answered that they were. Judge Carey also turned to Mr. Ivinson and asked him if he had any further claims against Mr. Hutton. Mr. Ivinson answered that he had not. Mr. Ivinson then released the mortgage referred to by me, signing the record, which was attested by J. W. Meldrum, register of deeds. Judge Carey then wrote the checks to pay off the judgments and liens against Mr. Hutton, first asking, however, whether his checks would be taken instead of money. (Counsel for complainant objects to all that part of the answer before the word 'Hutton,' in the twelfth line, and moved to strike the same out, because it is not responsive to the question asked, and because it is incompetent, irrelevant, and immaterial.) Q. State who were present during the time of the settlement mentioned in your last answer. A. J. W. Meldrum, register of deeds, Edward Ivinson, J. M. Carey, H. B. Rumsey, Chas. H. Hutton, S. W. Downey. These were all I remember. Q. State whether or not in that settlement, or shortly thereafter, any reference was made to a claim made by Ivinson against Hutton, which was then in litigation in the supreme court of the United States, and based upon a reformation of the note for $13,582.54, which is referred to in pleadings in this case. If so, state what was said, and by whom, in reference to that matter. A. After Mr. Ivinson had entered the satisfaction of the mortgage referred to, Mr. M. C. Brown, attorney for the complainant, opened the door leading into the office where this settlement had taken place, and called Judge Carey's attention to the suit referred to by you, and that in the event of the suit

### Ivinson v. Hutton.

being decided in favor of Mr. Ivinson, he would endeavor to make his claim. Judge Carey answered, in substance, 'We don't care for that now.' Q. Was any allusion made to the matter referred to in the last question before the complainant had satisfied the mortgage in question by any of the parties to the settlement? A. None that I heard."

But Carey's statement is not only supported by these witnesses, but it is highly probable in itself. He was about to loan Hutton a large sum of money to pay his debts, on real-estate security, on part of which Ivinson had a mortgage. It was perfectly natural that he should want the security to be ample and be free from all prior incumbrances. It would be rather strange if he had not insisted that the discharge of Ivinson's mortgage should be full and complete and according to the statute, and it would be still more strange that Ivinson should make an entry on the margin of the record of his mortgage, such as the law provides shall be a discharge, if he did not mean it. It is certainly reasonable to suppose that if he intended only a special release, saving his rights in the supreme court of the United States, he would have so entered it; or if he considered agreement D still in force, that he would have referred to it in some way in the entry of the discharge. Besides, he was interested in Hutton getting the money, to the amount of nearly $6,000,—$5,549.88, the sum of the Creighton judgment, and $434.-46 costs, for which he was responsible. He had abandoned his demand for $500 rather than prevent a settlement. He knew that he must make that discharge absolute, according to the statute, to satisfy Carey, or defeat a settlement of Hutton's affairs, in which he was more deeply interested than any other party except Hutton himself. And he made the discharge according to law. It is true, he did this reluctantly, but he did it deliberately and intelligently. On page 77 of the transcript Downey testifies that "Ivinson refused to go up to the court house and satisfy the mortgage referred to in the contract of May 31, 1877, insisting that if he did it would kill his mortgage, and his suit in the supreme court of the United States, against defendant Charles H. Hutton, would amount to nothing." He afterwards changed his mind, for reasons satisfactory to himself, and did knowingly kill his mortgage, and no mysterious virtue in agreement D can restore it to life.

Ivinson's right thus to extinguish this mortgage at any time he chose, either before or after the first of August, of course, cannot be questioned. Neither he nor Hutton, nor anybody else, has any right to complain that he did more than he had promised.

But it does not follow from the cancellation of the mortgage that the reformed note was all paid. Mortgages are not unfrequently released for other reasons than the full payment of the debts they are given to secure. In Donnelly v. Simonton, 13 Minn. 305, (Gil. 281,) the court says: "It is clearly competent for the parties to release either the personal liability or the real security, and the release of the one cannot affect the validity of the other." Hutton indeed says in his sworn answer, "that the said note is fully paid and discharged," and he denies in said answer "that there is owing on said note, as reformed, any sum whatever." But this case depends upon the mortgage, and not upon the note, and it is not necessary to decide or even to discuss any further the question whether the note was paid or otherwise settled or not. The district court found that the complainant had no mortgage to secure the payment of the amount claimed to be due on the reformed note, and consequently no equity to sustain his petition.

I think the decree was correct and should be affirmed.

BLAIR, J., concurring. SENER, C. J., dissenting.

### NOTE.

#### EVIDENCE—PAROL—To VARY CONTRACT.

The effect of a written contract cannot be changed by parol evidence of a contemporaneous agreement, Eberle v. Trust Co., (Pa. Sup.) 4 Atl. Rep. 809; Stiles v. Vandewater, (N. J. Sup.) 4 Atl. Rep. 658; Burnes v. Scott, 6 Sup. Ct. Rep. 865; Hutton v. Maines, (Iowa,) 28 N. W. Rep. 9; Gram v. Wasey, (Mich.) 7 N. W. Rep. 84; Snyder v. Boulder Co., (Colo. Sup.) 8 Pac. Rep. 917; in the absence of fraud or mistake, Hyndman v. Hogsett, (Pa. Sup.) 4 Atl. Rep. 717; Marsh v. McNair, (N. Y. App.) 1 N. E. Rep. 660; Smith v. Butler, (Or.) 4 Pac. Rep. 517; nor by proof of previous verbal agreements, Rice v. Lewis, (Pa. Sup.) 4 Atl. Rep. 810; Corse v. Peck, (N. Y. App.) 7 N. E. Rep. 810; Hotchkiss v. Carney, (Mich.) 12 N. W. Rep. 182; Barhydt v. Bonny, (Iowa,) 8 N. W. Rep. 672; and such evidence is not admissible to add to or take from the meaning of an unambiguous contract, Warren Glass-Works Co. v. Keystone Coal Co., (Md.) 5 Atl. Rep. 253· Mellen v. Ford, 28 Fed. Rep. 639, and

Ivinson v. Hutton.

note; Sias v. Insurance Co., 8 Fed. Rep. 187; Biederman v. O'Connor, (Ill. Sup.) 7 N. E. Rep. 463; Long v. Iron Works, (N. Y. App.) 4 N. E. Rep. 735; Beason v. Kurz, (Wis.) 29 N. W. Rep. 230; Baker v. Morehouse, (Mich.) 12 N. W. Rep. 170; Johnson v. Powers, (Cal.) 3 Pac. Rep. 625; or to vary its terms, Dixon v. Blondin, (Vt.) 5 Atl. Rep. 514; Courtright v. Burnes, 13 Fed. Rep. 317; Espey v. Blanks, 9 Fed. Rep. 432; The Golden Rule, Id. 334; Coots v. Farnsworth, (Mich.) 28 N. W. Rep. 534; Daly v. W. W. Kimball Co., (Iowa,) 24 N. W. Rep. 756; Swain v. Grangers' Union, (Cal.) 10 Pac. Rep. 404: Donohoe v. Mining Co., (Cal.) 5 Pac. Rep. 495; Armour Bros. B. Co. v. Riley Co. Bank, (Kan.) 1 Pac. Rep. 506; Rice v. Lewis, (Pa. Sup.) 4 Atl. Rep. 810.

But this does not prevent proof that the parties had entered into an oral agreement on some collateral matter, or which constitutes a condition on which the performance of the written agreement is to depend, Michels v. Olmstead, 14 Fed. Rep. 219; or to show that the intention of the parties was that the contract was not to become operative, except on the happening of a future contingent event, Skaaraas v. Finnegan, (Minn.) 16 N. W. Rep. 456; Westeman v. Krumweide, (Minn.) 15 N. W. Rep. 255.

Preponderance of evidence only is required, when admissible to vary a written instrument. Holt v. Brown, (Iowa,) 19 N. W. Rep. 235.

See, also, Thomas v. Loose, (Pa. Sup.) 6 Atl. Rep. 326, 330; Jones v. Backus, Id. 335; Jackson v. Payne, Id. 340.

The rule against admitting parol evidence to alter or contradict a written contract applies to the signatures of the parties, as well as to the body of the contract. Bulwinkle v. Cramer, (S. C.) 3 S. E. Rep. 776.

Conversations or agreements had or made prior to the making of a written contract tending to vary or dispute its provisions are inadmissible. Jacobs v. Shenon, (Idaho,) 29 Pac. Rep. 44.

A party to a contract cannot, by proving what he said or wrote to a third person after the contract was entered into, show either what it means or what he understood it to mean. Hill v. Manufacturing Co., (Ga.) 3 S. E. Rep. 445.

An unambiguous contract cannot be interpreted by evidence as to the understanding of the parties. Brewster v. Potruff, (Mich.) 20 N. W. Rep. 823; Eggert v. White, (Iowa,) 13 N. W. Rep. 426; Johnson v. Cranage, (Mich.) 7 N. W. Rep. 188; Van Evera v. Davis, (Iowa,) 2 N. W. Rep. 509, 512; Donohoe v. Mining Co., (Cal.) 5 Pac. Rep. 495.

Parol evidence is admissible to explain the meaning attached to expressions used, when their meaning is doubtful. Rhodes v. Rolling-Mill Co., 17 Fed. Rep. 426; Jaqua v. Witham & Anderson Co., (Ind. Sup.) 7 N. E. Rep. 314; Barton v. Anderson, (Ind. Sup.) 4 N. E. Rep. 420; or to explain an interpolation. Jenkinson v. Monroe, (Mich.) 28 N. W. Rep. 663; Rush v. Carpenter, (Iowa,) 6 N. W. Rep. 172.

To explain a description in a deed or will, or to identify the land described, Chambers v. Watson, (Iowa,) 14 N. W. Rep. 336; Crooks v. Whitford, (Mich.) 11 N. W Rep. 159· Whitney v.

Robertson, (Wis.) 10 N. W. Rep. 512; Messer v. Oestreich, Id. 6; Patch v. White, 6 Sup. Ct. Rep. 617; Thornell v. City of Brockton, (Mass.) 6 N. E. Rep. 74; Whitman v. Morey, (N. H.) 2 Atl. Rep. 899; Blair v. Bruns, (Colo. Sup.) 8 Pac. Rep. 569; Armijo v. Town Co., (N. M.) 5 Pac. Rep. 709; or to show which of two persons of the same name is intended as the grantee in a deed, Begg v. Begg, (Wis.) 14 N. W. Rep. 602; or the beneficiary in a will, Webster v. Morris, (Wis.) 28 N. W. Rep. 353.

But not to explain a patent ambiguity in a deed. Brandon v. Leddy, (Cal.) 7 Pac. Rep. 33. See, also, Mellen v. Ford, 28 Fed. Rep. 639.

Parol evidence is admissible to show that a written contract was to become operative only on the happening of a future contingent event. Skaaraas v. Finnegan, (Minn.) 16 N. W. Rep. 456; Westeman v. Krumweide, (Minn.) 15 N. W. Rep. 255; McFarland v. Sikes, (Conn.) 7 Atl. Rep. 408.

In *Indiana* it may be shown by parol that a promissory note was executed to evidence an advancement, Buscher v. Knapp, 8 N. E. Rep. 263; but not in *Iowa*, Geith v. Engler, 33 N. W. Rep. 131.

As to the general question of the admissibility of parol evidence to alter or explain a written instrument, see Blair v. Buttolph, (Iowa,) 33 N. W. Rep. 349; Bank v. Perry, Id. 341; Bailey v. Cornell, (Mich.) Id. 50; Ferguson v. Davis, (Mich.) 32 N. W. Rep. 892; Cake v. Bank, (Pa. Sup.) 9 Atl. Rep. 302; Yeager v. Yeager, (Pa. Sup.) 8 Atl. Rep. 579; Cooper v. Whitmer, (Pa. Sup.) 6 Atl. Rep. 571; Cullmans v. Lindsay, Id. 332; Thomas v. Loose, Id. 326; Jones v. Backus, Id. 335; Jackson v. Payne, Id. 340; Mellen v. Ford, 28 Fed. Rep. 639, and note; Michels v. Olmstead, 14 Fed. Rep. 219; Jones v. Shepley, (Mo. Sup.) 2 S. W. Rep. 400.

In the absence of an allegation and of proof and finding that there was either fraud or mistake, an instrument must have force and effect according to its terms, and cannot be varied, explained, or contradicted by parol evidence. Marsh v. McNair, (N. Y. App.) 1 N. E. Rep. 660.

A stranger to a written instrument is not estopped from offering parol testimony to vary the same, and prevent the fraudulent operation of it upon his own interests. To this end parol testimony of a party to the instrument is admissible. Highstone v. Burdette, (Mich.) 27 N. W. Rep. 852.

Where a contract is perfectly clear, without patent or latent ambiguity, it states the language of the parties, and parol evidence is inadmissible to add to or take from its meaning. Long v. Millerton Iron Co., (N. Y. App.) 4 N. E. Rep. 735.

Where a contract has been reduced to writing, parol evidence is inadmissible to contradict or vary the terms of the written instrument; and it is error for the court to admit of such evidence. Daly v. W. W. Kimball Co., (Iowa,) 24 N. W. Rep. 756.

In an action on a written contract, parol evidence of stipulations not in it is inadmissible. Baker v. Morehouse, ·(Mich.) 12 N. W. Rep. 170.

## Ivinson v. Hutton.

Contemporary parol agreement cannot be set up in violation of express written contracts. Gram v. Wasey, (Mich.) 7 N. W. Rep. 84.

A written contract cannot be varied by proof of previous verbal agreements. Hotchkiss v. Carney, (Mich.) 12 N. W. Rep. 182.

Parol evidence of a prior agreement is not admissible to vary or contradict a written contract. Barhydt v. Bonny, (Iowa,) 8 N. W. Rep. 672.

Parol evidence is not admissible to alter the terms of a written contract. The Golden Rule, 9 Fed. Rep. 334; Espy v. Blanks, Id. 432; Courtright v. Burnes, 13 Fed. Rep. 317.

Where the meaning of the terms of a written contract is clear, evidence of extrinsic circumstances is inadmissible for the purpose of varying such meaning. Sias v. Insurance Co., 8 Fed. Rep. 187.

When the parties, without any fraud or mistake, have deliberately put their engagement in writing, the law declares the writing to be not only the best, but the only, evidence of the agreement; but this does not prevent parties to a written agreement from proving that, either contemporaneously or as a preliminary measure, they had entered into a distinct oral agreement on some collateral matter, or an oral agreement which constitutes a condition on which the performance of the written agreement is to depend. Michels v. Olmstead, 14 Fed. Rep. 219.

It is said in Stoops v. Smith, 100 Mass. 63, that in an action on a written contract to pay "fifty dollars for inserting business card in two hundred copies of his advertising chart, to be paid when the chart is published," etc., parol evidence is admissible to show that at the time the contract was made the plaintiff agreed to make the chart of certain material, and to publish it in a certain manner.

In a contention between a party to an instrument and a stranger to it, either may give parol evidence differing from the contents of the instrument. McMaster v. Insurance Co., 55 N. Y. 222.

The rule which forbids the introduction of parol evidence to contradict, add to, or vary a written instrument does not extend to evidence offered to show that a contract was made in furtherance of objects forbidden by statute, by common law, or by the general policy of the law. Martin v. Clarke, 8 R. I. 389.

A written lease of an hotel having been executed, parol evidence is competent to establish a contemporaneous oral agreement by the lessor, in consideration of the lease not to engage in a rival business in the same city. Welz v. Rhodius, 87 Ind. 1.

In McKim v. Aulbach, 130 Mass. 481, where a contract called for Early Rose potatoes, evidence that mixed potatoes, consisting mainly of Early Rose, were generally known as Early Rose potatoes, is inadmissible.

Where the description of land in a deed under which the plaintiff claims is definite and certain, and no latent ambiguity is discovered, extrinsic evidence to vary its terms is inadmissible. Holcomb v. Mooney, (Or.) 11 Pac. Rep. 274.

Where extracts and minutes from burned records are abbreviated, it is proper to explain the abbreviations by parol evidence. Converse v. Wead, (Ill. Sup.) 31 N. E. Rep. 314.

Though a chattel mortgage recites that it is given to secure an absolute and definite debt, parol evidence is admissible to show that it was given to secure the contingent liability of the mortgagee as surety for the mortgagor. Sparks v. Brown, 46 Mo. App. 529.

Where the party offering parol evidence is not a party to the written contract, the rule that oral evidence cannot be received to change the terms of written contracts does not apply. Fonda v. Burton, (Vt.) 22 Atl. Rep. 594.

Parol evidence to prove non-delivery of an obligation does not contravene the rule prohibiting the introduction of parol evidence to vary a written instrument. Manufacturing Co. v. Briggs, (Tex. Sup.) 18 S. W. Rep. 555.

In an action on a promissory note, parol evidence is inadmissible to show an oral agreement that the payee would save the sureties harmless, and satisfy the note out of collateral securities deposited by the principals. Stewart v. Bank, (Ariz.) 30 Pac. Rep. 303.

Parol evidence is admissible to show an agreement between defendant and his co-indorser on a note to hold him harmless. McPherson v. Weston, (Cal.) 24 Pac. Rep. 733.

A receipt may always be explained or contradicted by parol evidence. Catoe v. Catoe, (S. C.) 10 S. E. Rep. 1078; Elsbarg v. Myrman, (Minn.) 43 N. W. Rep. 572.

Where a writing is both a receipt and a contract, that portion operative as a receipt may be contradicted or explained. Hossack v. Moody, 39 Ill. App. 17; Burke v. Ray, (Minn.) 41 N. W. Rep. 240.

Parol evidence is admissible to prove error in a commercial document, such as a receipt for money. Schwersenski v. Vineberg, 19 Can. S. C. R. 243.

The rule that parol evidence is inadmissible to vary, explain, enlarge, or contradict a written contract, has no application to evidence merely showing that there was an agreement to be afterwards given, but which does not show its terms. Davis v. Cochran, (Iowa,) 32 N. W. Rep. 445.

Where a written contract is unambiguous, and there is no allegation of fraud or mistake, it is not error to refuse to allow a party to testify as to the purpose of certain interlineations, and as to the person who made them. Bowe v. Dotterer, (Ga.) 4 S. E. Rep. 253.

Where a written contract, unambiguous in its terms, is duly executed by plaintiff, after its contents are explained to him, the fact that he cannot read or write does not affect the rule that a written contract cannot be overthrown on the mere opposing testimony of one party, contradicted by the oath of another, particularly where the latter is disinterested. North v. Williams, (Pa. Sup.) 13 Atl. Rep. 723.

Where a written contract is made and delivered, and nothing remains to complete its execution, parol evidence is inadmissible to prove an understanding that it shall not be operative according to its terms. Westman v. Krumweide.

Halleck v. Bresnahen.

(Minn.) 15 N. W. Rep. 255; Skaaraas v. Finnegan, (Minn.) 16 N. W. Rep. 456; and Bank v. Luckow, (Minn.) 35 N. W. Rep. 434,—distinguished. Harvesting - Mach. Co. v. Wilson, (Minn.) 40 N. W. Rep. 571.

An admission contained in a letter may be explained by parol evidence. Smith v. Crego, (Sup.) 7 N. Y. Supp. 86.

Evidence is competent to show what was said and done between parties, but not to show their understanding of such facts. Stanley v. Pickhardt, (Super. N. Y.) 6 N. Y. Supp. 930.

A mere admission of a fact subsequently in issue, although made in writing by the party, may be contradicted or explained by his oral testimony. Bingham v. Bernard, (Minn.) 30 N. W. Rep. 404.

Where only part of a warranty is reduced to writing, parol evidence is admissible to prove the remainder. Harvesting-Mach. Co. v. Snell, 23 Ill. App. 79.

A mere written acknowledgment of a sum due is not a complete contract in writing, so as to exclude oral testimony to contradict or explain it. Alexander v. Thompson, (Minn.) 44 N. W. Rep. 534.

The recital of a deed that a certain'consideration was paid may be contradicted by parol evidence. Lanier v. Faust, (Tex. Sup.) 16 S. W. Rep. 994.

A written contract, silent or ambiguous as to certain matters, may, as to them, be explained by parol evidence, not conflicting with anything plainly expressed in such contract. Johnston v. Patterson, (Ga.) 13 S. E. Rep. 17.

Matters purely introductory may be proved by parol, though written evidence thereof may be in existence. Parker v. Chancellor, (Tex. Sup.) 15 S. W. Rep. 157.

Parol evidence that more was received on a mortgage than its face, and less on a check than its face, is not objectionable as varying written instruments. Darragh v. Ross, (Sup.) 7 N. Y. Supp. 864.