ELI A. BRONSON AND STEPHEN W. HOPKINS v. CLINTON S. HERBERT.

*Contract—Order for goods—Acceptance—Action—Party in interest —Evidence—Set-off.*

1. An order to ship trees, given to an agent, does not become a binding contract between the orderer and the principals until accepted by them in writing, and notice is given to the orderer

of such acceptance; citing *Weiden v. Woodruff*, 38 Mich. 130; *Aldine Press v. Estes*, 75 Id. 100.[1]

2. In an action for goods sold and delivered, the defendant may show that the agent with whom he dealt, and not the plaintiffs, is the real party in interest, and to that end may ask the plaintiffs on cross-examination whether they charged the property to the defendant on their books, and whether he ever promised to pay plaintiffs therefor, and where the money would go if paid, and what interest the plaintiffs had in sales made by the agent.

3. A defendant may set off money paid to the plaintiffs, without consideration, in a prior transaction had with them, against the later demand sued upon; citing *Petersen v. Lumber Co.*, 51 Mich. 86; *Murphy v. McGraw*, 74 Id. 318.

Error to Wayne. (Gartner, J.) Argued March 7, 1893. Decided May 31, 1893.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Park & Henderson*, for appellant.

*Corliss, Andrus & Leete*, for plaintiffs, contended:

1. Under the set-off statute, it has been uniformly held that an unliquidated claim could not be set off. The damages sustained by the defendant, if any, were certainly of this kind, and therefore not a proper claim of set-off; citing *Carter v. Jaseph*, 48 Mich. 615; *Morehouse v. Baker*, Id. 339; and a claim for damages can be recouped only when springing out of the contract or transaction sued upon; citing *Ward v. Willson*, 3 Mich. 1; *Platt v. Brand*, 26 Id. 173; *Chandler v. Childs*, 42 Id. 128; *Morehouse v. Baker*, 48 Id. 339.

HOOKER, C. J. The plaintiffs are nurserymen of Geneva, N. Y. In 1883 they made the following agreement in writing with one W. W. Essig:

" The following agreement, made and entered into this 23d day of March, 1883, between Bronson & Hopkins, of

---

[1] See *Challenge Wind & Feed Mill Co. v. Kerr*, 93 Mich. 328; *Leo Austrian & Co. v. Springer*, 94 Id. 343.

Geneva, N. Y., of the first part, and William W. Essig, formerly of Elmore, Ohio, now of Detroit, Michigan, of the second part, witnesseth:

"B. & H. agree to furnish the said Essig, for the fall packing of 1883, such nursery stock as the said Essig may require, at the following prices; it being mutually understood by both parties that such varieties of trees and such ornamentals as B. & H. do not grow or have on hand the said Essig shall have the privilege of buying of other parties, unless the said B. & H. prefer to buy such stock of other parties for the said Essig, and, in case of all such purchases by either party, the said Essig shall pay to B. & H. one cent for each tree so purchased, in addition to the cost of the stock, for packing the same.

"It is understood that the said Essig is to act as general agent for the said B. & H. for the sale of nursery stock, with the privilege of using orders and letter-heads printed in the name of the firm Bronson & Hopkins.

[Here follows a list of trees and prices.]

"All the above stock to be first class, billed upon our (B. & H.) packing ground, and delivered at the depot without extra charge. The said Essig to furnish one man, and assist, himself, in packing.

"The party of the second part agrees to purchase his nursery stock, as above mentioned, of the parties of the first part, and to pay cash for the same (or give acceptable notes) at the time of delivery. The said B. & H. agree to furnish agents' certificates to such men as the said Essig may employ.

"In consideration of the above-mentioned privileges the said Essig agrees to protect the said B. & H. from all harm and expense of suit in case of prosecutions arising from sales and collections of said nursery stock, or from any other cause, the same as if he was selling in his own name; it being understood that the said B. & H. have no interest or profits from the retail sales of the said Essig.                    BRONSON & HOPKINS.
                    "W. W. ESSIG."

                    "GENEVA, Oct. 12, 1883.

"It is hereby mutually agreed that the above contract, with all conditions and specifications, is renewed and continued for the spring sale of 1884, except the changes in prices in red ink, which are to be the prices for spring.
                    "BRONSON & HOPKINS.
                    "W. W. ESSIG."

"GENEVA, N. Y., 4–17, '84.
" We, the undersigned, agree to renew within contract for the fall of 1884, with the following changes: That dwarf pears are to be at 16c., and apples are left open for future agreement.

"BRONSON & HOPKINS.
".W. W. ESSIG.
" M. A. McCARTHY, Witness."

This action was begun by Essig in the name of plaintiffs. The right to recover is based upon the following writing:

"BRONSON & HOPKINS, Nurserymen, Geneva, N. Y.:
" You will please have dug and furnish me the following nursery stock, for which I agree to pay the prices set opposite the respective articles, amounting to $1,255, in cash, on delivery at Dalton, Mich., in the fall of 1891. Should any part of such stock be omitted, through miscount or otherwise, the price of such part shall be deducted. No countermands accepted.

" 12 crab apples.
" 1,800 standard pears.
" 1,800 dwarf pears.
" 500 plum trees.

" It is mutually agreed that the stock in this contract is not warranted further than to be delivered in good condition, and the order not subject to countermand, and must be taken according to the printed condition hereon. Agents not allowed to plant stock when delivered, and no outside agreement or bargain by the agent shall in any way affect this contract. The fruit trees, if any, are to be grafted or budded, and all the above are to be delivered in a thrifty and healthy condition. Standard apple, standard pear, and cherry trees are not to be less than five feet in height; plum trees not less than four feet; dwarf pear trees not less than three feet.

" Date, June 10, 1891.
" Agent's name, W. W. Essig.
" Full name of purchaser, C. S. Herbert.
" Purchaser's signature, C. S. Herbert."

Indorsed on back of paper as follows:

" Dwarf Pears: 1,200 Duchess; 600 B. D. Anjou.

"Standard Pears: 300 Clapps; 300 Bartlett; 600 President; 600 Lawrence.

"Plum: 200 Niagara; 100 Shipper's Pride; 100 Quackenboss; 100 Genii.

"Crab Apple: 12 Whitney Cider.

"Stock to be first class."

The words, "In consideration of the foregoing order, we agree to replace at half price at our next delivery all stock that fails to live, provided we are notified of such failure by August following the delivery thereof, and remittance for the stock to be replaced accompanies said notice;" also, "In case you cannot furnish all the specified varieties you may substitute others considered by you equally desirable,"—were erased in the order.

Essig testified that the stock was delivered, accepted by defendant, and a settlement made, wherein it was agreed that the amount due was $1,255; that defendant paid Essig a certificate of deposit for $500, and took a writing showing that $755 remained unpaid; that subsequently he obtained from Essig the certificate under a fraudulent pretext, and afterwards refused to talk about the matter.

The defendant, who resided in Detroit, claimed that the order for stock was part of an arrangement made in the spring of 1891 with Essig, who defendant supposed to be acting for the plaintiffs, to set out fruit trees on 40 acres of land in Muskegon county; that it was not all cleared, and Essig was to set out what defendant had cleared in the spring of 1891, and to furnish the rest when the ground could be prepared. He further claimed that no contract relations existed between the plaintiffs and himself, and, further, that the trees furnished in the spring, and for which he had paid Essig, never came from plaintiffs, and were worthless, by reason of which he sought to set off the money paid for them, as money paid without consideration.

The trial judge held that the order was a complete, valid, binding contract, and declined to admit proof of any of the circumstances of its delivery, or the negotiations in relation to it.

We cannot take this view. This paper is an order on the plaintiffs to ship stock mentioned therein. Before it could become a binding contract between these parties, it was necessary that the plaintiffs or some one authorized to bind them should assent thereto in writing, and give the defendant notice thereof. *Weiden v. Woodruff*, 38 Mich. 130; *Aldine Press v. Estes*, 75 Id. 100. Plaintiffs' counsel allege in their brief that the order was accepted in writing by Essig, who they claim was plaintiffs' agent, but they fail to point us to the evidence showing that fact. His name was appended to the order, but as a mere memorandum. This being true, it was a right of the defendant to show the negotiations and conditions upon which the order was given. Under his theory the furnishing of the trees in the spring was a part of this transaction, and a recoupment, which in that view would have been possible, is cut off by treating each delivery as a separate contract.

Defendant sought to show that Essig, and not the plaintiffs, was the real party in interest; in other words, that the plaintiffs were not the owners of the claim. No rule is better settled than that a defendant may show in an action at law that the plaintiff has no cause of action against him. *Blackwood v. Brown*, 32 Mich. 104. Hence it was proper cross-examination to ask plaintiffs whether they charged this stock to the defendant upon their books, and whether the defendant ever promised to pay plaintiffs $1,255 on the order, and where the money would go if paid, and what interest the plaintiffs had in Essig's sales, etc.

Again, defendant was entitled to prove his set-off if he

could, and have the same submitted to the jury. If he had paid to the plaintiffs $703.75, without consideration, in a prior transaction, it could be set off in this action. *Petersen v. Lumber Co.*, 51 Mich. 86; *Murphy v. McGraw*, 74 Id. 318.

It is unnecessary to notice specifically the many allegations of error, as the foregoing discussion covers the main questions in the case.

We feel constrained to reverse the judgment and grant a new trial.

Ordered accordingly.

McGRATH, LONG, and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.