## ADA DAIRY ASSOCIATION *v.* MEARS.

1. Stock-Subscription Agreement—Right of Action for Non-payment.

An agreement whereby a dairy company undertook to build a butter factory for a specified sum, in consideration of certain subscriptions, for which stock in a corporation to be formed by the subscribers should be issued, all moneys collected after payment of the contract price to be used as a working capital for the corporation, is a contract upon which the company, having fully performed on its part, may sue for the amount of the subscriptions, without waiting until all the stock necessary to incorporate is subscribed and paid.

2. Same—Conditions—Parol Testimony.

Parol' evidence that a subscriber to corporate stock was told that he might withdraw his subscription if, on consultation with another, to whom he was referred, he decided that he did not care to subscribe, and that he signed the subscription with such understanding, and, after making the inquiries, requested that his subscription be withdrawn, is not objectionable as contradicting the terms of a written contract, since such evidence tends to show that no completed contract ever existed.

3. Same—Pleading—Denial of Execution—Justices' Courts.

Under 1 Comp. Laws 1897, §§ 767, 826, providing that the execution of written instruments sued on in justice's court, and filed with the justice, shall not be denied, except by notice under oath at the time of pleading, a defendant in an action on a stock-subscription agreement, not having served notice under oath of his intention to deny the validity of the agreement, was not entitled to prove that his signature was conditional on his right to withdraw if he desired, and that he had elected to withdraw before suit.

4. Same—Genuineness' of Signature.

Though defendant admits the genuineness of his signature to a written agreement in suit, a denial of execution is necessary if he seeks to prove that the writing was never delivered as a completed contract.

Error to Kent; Davis, J., presiding. Submitted January 31, 1900. Decided March 27, 1900.

*Assumpsit* by the Ada Dairy Association against William Mears to recover the amount of a stock subscription. From a judgment for defendant, plaintiff brings error. Reversed.

*Walker & Fitz Gerald* (*Myron H. Walker*, of counsel), for appellant.

*Judkins & Perkins*, for appellee.

MONTGOMERY, C. J.   This is an action of *assumpsit*, commenced in justice's court.   The action is based on a stock subscription and an agreement entered into with the True Dairy-Supply Company, which agreement has been assigned by the True Dairy-Supply Company to the plaintiff.   By the terms of this agreement, the True Dairy-Supply Company undertook to build a butter factory for the price of $3,300, and to supply a competent butter maker for one year, if desired.   The several subscribers to the agreement, of whom defendant was one, undertook severally to pay stated subscriptions; and the subscribers, between themselves, agreed to incorporate under the laws of the State, and to fix the aggregate amount of stock at not less than the amount subscribed, and at the price of $10 per share.   It was also provided that extra stock to exceed the contract price could be subscribed, and that all money collected after paying the contract price should be used as a working capital.   A corporation was organized with an authorized capital stock of $4,000.

At the close of the evidence, the defendant contended that, as the stock was not all paid in, there could be no recovery, in any event; basing his contention on *International Fair & Exposition Ass'n* v. *Walker*, 88 Mich. 62 (49 N. W. 1086).   The circuit judge ruled against the defendant on this question, and, we think, rightly.   The original agreement was not only a stock subscription, but something more.   It was a contract between the True Dairy-Supply Company and the various subscribers. Under the terms of this contract, a right of action accrued

to the True Dairy-Supply Company, which was assigned
to plaintiff. Furthermore, it is evident* that the parties
contemplated that the organization might take place be-
fore the stock was all subscribed, which should be fixed in
the articles of incorporation.

The defense prevailed, and upon testimony offered to
show that the defendant never became a party to this con-
tract. The plea of the defendant was not accompanied by
an affidavit denying the execution of the written instru-
ment, which was declared upon and filed with the justice
of the peace. The notice given was that the defendant
was induced to sign the agreement by false and fraudu-
lent representations and statements, and that on the fol-
lowing day he withdrew his subscription, and was relieved
from all obligation, and that the subscription was then
and there canceled, and also that he never subscribed for
any of the stock of plaintiff.

The evidence in behalf of the defendant tended to
show that he was approached by a Mr. Jewett, the agent
of the True Dairy-Supply Company, and asked to sub-
scribe for stock; that he stated that he knew nothing about
the business, and did not care to subscribe without further
information; that he was then told by Mr. Jewett that a
Mr. Collar was acquainted with results attained at another
factory put up by the supply company, and Jewett asked
him to see Mr. Collar and learn the facts, and told him
that if he would sign the contract, and then see Mr. Col-
lar, if Mr. Collar did not give the results as he (Jewett)
had given them, he could take his name off;—that it would
not be binding; that he signed the agreement after this
conversation, and on the next day saw Mr. Collar, and
ascertained that the results were not as represented, and
that he immediately saw Jewett, and directed him to take
his name off the paper, and that Jewett then agreed to
do so.

Plaintiff contends that this testimony was not admissible
—*First*, because it tends to vary the terms of a written
instrument; and, *second*, because no affidavit denying

the execution of the instrument was filed with the justice, or has since been filed.    As to the first position, we think that the testimony tends to show an understanding between Mr. Jewett and the defendant to the effect that the contract should not be binding until the defendant had seen Mr. Collar, and verified the statements which Jewett had made to the defendant.    This testimony does not tend to vary the terms of a written agreement, but, rather, to show that no written agreement ever existed.    As to this feature, the case is very like *Pym* v. *Campbell*, 6 El. & Bl. 370.    The rule is there well stated by Erle, J. :

"I grant the risk that such a defense may be set up without ground, and I agree that a jury should therefore always look on such a defense with suspicion; but, if it be proved that in fact the paper was signed with the express intention that it should not be an agreement, the other party cannot fix it as an agreement upon those so signing. The distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible."

As we have seen, however, the defense in such a case goes to the existence of an agreement, and, unfortunately for the defendant, the state of the pleadings was such that he should not have been permitted to deny the existence of an agreement.    1 Comp. Laws 1897, §§ 767, 826.

It is said by defendant's counsel that the defendant cannot deny that he signed the instrument, because his signature thereto is genuine, and that his defense rests upon other grounds.    But the failure to deny the execution of the instrument affects, not only the signature, but the delivery of the writing as a completed contract.    *People* v. *Johr*, 22 Mich. 461; *Union Central Life Ins. Co.* v. *Howell*, 101 Mich. 332 (59 N. W. 599), and cases cited in the reporter's notes.

It is suggested in the brief of counsel for the defendant that the defense was that of fraud.    It might be sufficient to say that the theory of the charge was not so limited; but, further than this, we think the case did not take that

color. The plaintiff offered to show that the statements made by Jewett to the defendant as to the workings of the Middleville factory were true. This was excluded on the ground that the sole concern of the jury was to ascertain what Collar said. So it would appear that it was not the theory that the representations were fraudulent, but that, because Collar did not support them, defendant was at liberty to assert that the agreement never became binding upon him.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.