WHITE SHOWERS, INC., *v.* FISCHER.

1. CONTRACTS—CONDITION PRECEDENT AS TO OPERATION—PAROL EVI-
   DENCE.
   > One who executes a written contract may protect himself from
   > liability thereunder by a distinct agreement that it shall not
   > become operative, or recognized as delivered, until the ful-
   > fillment of a condition precedent and parol proof of such
   > agreement is not objectionable as tending to vary the terms
   > of a written agreement, notwithstanding contract may contain
   > statement it covers all agreements.

2. EVIDENCE—PAROL EVIDENCE—WRITTEN CONTRACT.
   > Parol evidence that there never was a contract, as distinguished
   > from parol evidence to alter, vary, contradict, or add to a
   > written contract, *held*, admissible in action for damages for
   > breach of an alleged contract.

3. CONTRACTS—STIPULATION COVERING ALL AGREEMENTS.
   > Provision stating that ''this order covers all agreements,'' in-
   > corporated in a written instrument, has force and effect only
   > after proof of the existence of a contract and cannot be used
   > to give life to something which has not yet come into being.

4. SAME—PAROL EVIDENCE—ORDER FOR IRRIGATION SYSTEM.
   > Parol evidence that a written order for the purchase of an irri-
   > gation system was given with the understanding that it was to
   > be obligatory only in case the purchaser should be allowed to
   > cancel a similar order previously given to another concern
   > *held*, not inadmissible as varying the terms of a written con-
   > tract.

5. SAME—CONDITION PRECEDENT—PAROL EVIDENCE.
   > The making and delivering of a writing, no matter how complete
   > a contract according to its terms, is not a binding contract if
   > delivered upon a condition precedent to its becoming obli-
   > gatory as in such case it does not become operative as a con-
   > tract until the performance or happening of the condition and
   > proving such conditional effectiveness is not an attempt to
   > vary the terms of a writing.

6. APPEAL AND ERROR—CONTRACTS—ACCEPTANCE.

    In action by vendor of irrigation system for damages for breach of alleged contract of purchase, question of acceptance of the contract *held,* not involved where no contract was entered into between plaintiff and defendant because of nonfulfillment of condition precedent in securing cancellation of contract of purchase of a system from another concern.

7. CONTRACTS — CONDITION PRECEDENT — BURDEN OF PROOF — EVIDENCE.

    In action for damages for breach of an alleged contract, where defense was that condition precedent to its effectiveness had not been fulfilled, defendant *held,* to have met his burden of proof of establishing that condition.

Appeal from Emmet; Sprague (Victor D.), J. Submitted October 9, 1936. (Docket No. 65, Calendar No. 39,128.)   Decided December 8, 1936.

Action by White Showers, Incorporated, a Michigan corporation, against Albert C. Fischer for damages for breach of an alleged contract. Judgment for defendant. Plaintiff appeals. Affirmed.

*Clink & Reuling,* for plaintiff.

*Clyde Comstock,* for defendant.

BUSHNELL, J.   In reply to an inquiry from defendant, Albert C. Fischer, a resident of Chicago, Raymond R. White, president of plaintiff company, called him at his summer home, about 12 miles from Harbor Springs.   Defendant was interested in procuring an irrigation system and had addressed a similar inquiry to another manufacturer described in the record as "The Skinner Irrigation Co."   A representative of the Skinner company had been there a day or so before and had obtained an order from Fischer.   White was informed of this fact,

It is defendant's claim that before signing a written order for the purchase of an irrigation system from plaintiff, it was agreed that the White order would be ineffective unless the Skinner order could be cancelled.

White testified that the contract was signed by Fischer at 11 o'clock in the morning of June 20, 1935, and that he immediately left defendant's summer home and delivered a telegram for him at the telegraph office in Harbor Springs, from which place it was forwarded to Skinner. The record contains a copy of a telegram of cancellation addressed to Skinner and signed by Fischer, which was sent on the same day that defendant signed the White order.

The written order given White, details the materials required, provides that the price shall be $1,650, recites that a check for $825 is attached, and shows that the balance shall be due upon July 31, 1935. It also contains the following language:

"This order covers all agreements and is * * * not subject to cancellation except with our consent and upon terms protecting us against loss."

The Skinner company replied by wire the same day that it was too late to cancel their order and informed defendant that shipment had already been made. At 4:59 p. m. that day defendant wired plaintiff:

"Cancel order Skinner shipped goods yesterday stopping payment on check sorry."

It appears from the testimony of White that after he had delivered the Fischer-Skinner telegram to the telegraph office at Harbor Springs, he went to the nearby city of Petoskey and about a quarter after one called his Detroit office, directing them

to commence work upon the order; it further appears that plaintiff company did make shipment of part of the equipment that afternoon. The remainder of the supplies were shipped a few days later, delivery being refused by defendant.

The check given with the White order on June 20th was dated June 24th. Plaintiff says:

"Mr. Fischer stated that the reason he was postdating the check was that it was necessary that he transfer additional funds to cover the check. That was the only reason he gave for postdating the check and that reason was acceptable to me. I was willing to accept the check as the down payment on the system."

Fischer testified that White was informed about the Skinner order on the 19th and that later was told there wasn't any chance of getting an order because he, Fischer, was tied up with Skinner, etc. The following morning, when Fischer was persuaded to give White a "tentative" order, he claims he asked White to incorporate this understanding in the written order and was informed that it was not necessary because the order would not be effective unless the Skinner cancellation was accomplished. Fischer denied any representations about the bank account or bank balance and insisted that his commercial account was more than sufficient to cover the check. He claims that it was dated three days ahead to enable him to determine whether he could secure a cancellation from Skinner. Defendant's statement of his account in the First National Bank of Chicago for the month of June, 1935, showing more than sufficient funds to cover the check, was received in evidence in support of this testimony.

Plaintiff's suit for damages suffered by reason of breach of its claimed contract with defendant was heard before the trial court sitting without a jury and resulted in a judgment for defendant. A number of questions are presented by the appeal, some of which are not essential to this decision. The controlling question is whether parol testimony can be introduced to show that the White order was not to become operative until and unless the Skinner order was cancelled. The condition precedent rule, which we believe applicable herein, was stated generally in *Rothstein* v. *Weeks*, 224 Mich. 548:

"The law is well settled that one who executes a contract may protect himself from liability by a distinct agreement that it shall not become operative, or recognized as delivered, until other parties execute it also, and parol proof of such agreement is not objectionable as tending to vary the terms of a written agreement, as it only goes to show that whatever its terms the instrument never had validity as a contract. *Dikeman* v. *Arnold*, 78 Mich. 455.; *Cleveland Refining Co.* v. *Dunning*, 115 Mich. 238; *Ada Dairy Ass'n* v. *Mears*, 123 Mich. 470; *Hodge* v. *Smith*, 130 Wis. 326 (110 N. W. 192)."

Appellant admits the soundness of the rule, but contends that it does not apply to "a contract which on its face states that there is no condition resting in parol." The writing itself does not make this statement. We have heretofore quoted the exact language of the contract. The effect of the actual quotation is that if there be a contract, then the writing represents all that is contained in that contract.

It is sometimes difficult to make a clear distinction between an attempt to alter, vary, contradict, or add to a written agreement by parol, and a

showing by oral testimony that a writing was never intended to bind the parties unless a condition precedent was fulfilled. No attempt was made in the instant case to alter, vary, contradict, or add to the writing, but oral testimony was offered in support of the proposition that there never was a contract. The distinction is real and not merely academic. The case presents a situation in which there was manual delivery of a writing which embraced all the provisions of the agreement, if there was a contract; but it is insisted by defendant that whether the contract was to come into being and whether its delivery be legal and binding depended upon the fulfillment of a condition precedent. The written stipulation of the order which states "this order covers all agreements" pre-supposes a binding contract inasmuch as only a binding contract could give life to the stipulation. Without such a contract, there is nothing to which the stipulation could be attached. It is an essential part of the contract, if there be one, and could only have force and effect after proof of the existence of the contract itself. It cannot be used to give life to something which had not as yet come into being.

"An agreement that a contract shall have no binding effect until the fulfillment of a condition or the happening of a contingency may be proved by parol and is enforceable. *Rothstein* v. *Weeks,* 224 Mich. 548; *Cleveland Refining Co.* v. *Dunning,* 115 Mich. 238; *Ada Dairy Ass'n* v. *Mears,* 123 Mich. 470; 22 C. J. pp. 1149, 1213." *Sharrar* v. *Wayne Savings Ass'n,* 246 Mich. 225.

A comparable situation is found in *Cleveland Refining Co.* v. *Dunning,* 115 Mich. 238. In that case a written order somewhat similar to the one presented here was executed by defendant, except that

this order did not contain a stipulation that "this order covers all agreements." Testimony was offered to prove that it was understood between the parties "that it was to be obligatory only in case the defendants should be allowed to cancel a similar order previously given to the Standard Oil Company, but that they were not permitted to do this, and so informed the plaintiff." The trial judge excluded this testimony, holding that the writing could not be varied by parol testimony. Upon appeal, we held such exclusion was error and said:

"The making and delivering of a writing, no matter how complete a contract according to its terms, is not a binding contract if delivered upon a condition precedent to its becoming obligatory. In such case it does not become operative as a contract until the performance or happening of the conditions precedent. Proving this is not an attempt to vary the terms of a writing admitted to have been executed and delivered with the understanding that it should take effect, as was the case in *Phelps* v. *Abbott,* 114 Mich. 88. See Bishop on Contracts (1st Ed.), § 170; *Ware* v. *Allen,* 128 U. S. 590 (9 Sup. Ct. 174)."

The *Dunning Case, supra,* is controlling notwithstanding the absence of the "covers all agreements" language in that contract, because, as we have pointed out, the stipulation can only be given life by the contract itself. Therefore that clause neither adds to nor takes away from the effect of either the general rule regarding parol testimony affecting written instruments or the rule regarding such testimony as to conditions precedent.

We have also held that the condition upon which a deed has been delivered and placed in escrow may be shown by parol testimony. *Fulton* v. *Priddy,* 123 Mich. 298 (81 Am. St. Rep. 201).

See, also, note in 32 A. L. R. at page 785 in the case of *Travers-Newton Chautauqua System* v. *Naab,* 196 Iowa, 1313 (196 N. W. 36), which is reported in full at page 780, and the text in 10 R. C. L. pp. 1053, 1054, 1055.

The trial court, in addition to holding parol testimony regarding a condition precedent was admissible, added the further proposition that the contract had not been accepted in writing nor had any notification of acceptance thereof been given to defendant, citing *Bronson* v. *Herbert,* 95 Mich. 478.

We agree with appellant that the question of acceptance is not involved and that the authority cited by the trial court is not applicable. The matter of acceptance could not become important until after the cancellation of the Skinner contract had been effected, this being a condition precedent to the formation of the contract.

Appellant disagrees with the applicability of the rule in the case of *Cleveland Refining Co.* v. *Dunning, supra,* arguing that the proper rule of law is found in *Frischkorn Real Estate Co.* v. *Hoskins,* 226 Mich. 30, and *New Prague Flouring Mill Co.* v. *Hewett Grain & Provision Co.,* 226 Mich. 35.

In the *Frischkorn Case,* the action was for damages arising out of the breach of a contract for the exchange of real estate. Defendant claimed that the agreement was not binding and never became operative because it was executed and delivered upon a condition precedent that the defendant would be able to secure a division of the mortgage upon his property. The opinion points out that "such an agreement would be inconsistent with his undertaking in writing and tend to vary its terms," and since the alleged condition tended to add to and vary the agreement, it did not fall within the *Dunning Case.*

In the *New Prague Flouring Mill Case,* which was an action for breach of a contract for the sale of flour, defendant, a wholesaler, in an effort to avoid the agreement, offered testimony tending to show an oral understanding made with plaintiff's agent to put on an advertising campaign in some of the cities in which defendant did business. It was the claim of defendant that the order for the purchase of the flour, which contained a "no further agreement" stipulation, was not to go into effect until the advertising campaign engagement was performed by plaintiff. We upheld the rejection of this testimony on the ground that such an agreement was collateral to the order and not within the rule of conditions precedent. We pointed out that if defendant's proofs were accepted, they would add provisions to the contract and cause plaintiff to be obligated to do more than it had agreed to do in the written order.

In the instant case, no such attempt has been made; the agreement is complete within itself and that which was sought to be proved involved a matter wholly separate and apart from the order and not embraced within its terms. It was without and not within; it preceded and neither accompanied nor followed the contemplated sale of the irrigation equipment.

In the *New Prague Flouring Mill Case,* reference was made to *Carney* v. *Hotchkiss,* 48 Mich. 276, where plaintiff attempted to show a different price than that stated in the contract, and *Hawley* v. *Dibble,* 184 Mich. 298, where it was claimed that two parties named in a deed as husband and wife were not, in fact, such, at the time the deeds were made.

An analysis of any of the parol testimony cases cannot be clear unless one constantly keeps in mind

the distinction between that which precedes the making of a contract and that which it is claimed accompanies its operation or is affected subsequently by it.

The trial court did not err in admitting parol testimony tending to show a condition precedent to the formation of the contract and was correct in finding that the defendant had met the burden of establishing that condition. Since that evidence discussed herein was admissible, and since the court determined as a matter of fact that the parties had a preceding agreement regarding the cancellation of the Skinner contract, it must necessarily follow that because defendant did not succeed in securing a cancellation of the Skinner order, no contract was entered into between plaintiff and defendant.

The judgment is affirmed, with costs to defendant.

NORTH, C. J., and FEAD, WIEST, BUTZEL, SHARPE and TOY, JJ., concurred. POTTER, J., did not sit.