AUGUST TERM, 1885. 159

Fuller and another, Ex'rs, etc. vs. Green.

Fuller and another, Executors, etc., Appellants, vs. Green, Respondent.

*September 22 — October 13, 1885.*

Alteration of Written Instrument: Promissory Notes: Fraud. *(1) Immaterial alteration does not avoid. (2) Adding witness to note. (3) Intent. (4) What law governs. (5, 6) Fraud: Burden of proof: Compromise of claim.*

1. An alteration of a written contract, which in no way changes the legal effect thereof as between the parties thereto, is immaterial and does not avoid the contract.
2. Merely affixing the name of an attesting witness to a promissory note is not a material alteration thereof.
3. If an alteration is immaterial, the intent with which it was made is immaterial.

4. The materiality of an alteration is to be determined by its effect upon the rights of the parties under the laws of the state in which the question is raised.

5. If in an action thereon it is shown that a promissory note was obtained by fraud, the burden of proof is upon the plaintiff to show that he is a *bona fide* purchaser for value before due.

6. A promissory note the consideration of which was the compromise of a fraudulent claim, if the maker has not waived his rights, is void in the hands of any person not a *bona fide* purchaser for value before due.

APPEAL from the Circuit Court for *Jefferson* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

"This action was commenced to recover the amount of a promissory note given by the respondent to one George H. Rice. The note had been transferred by Rice to one A. J. Woodward, in whose name the action was originally commenced. Woodward died after the action was commenced, and the present appellants, his executors, were substituted as plaintiffs.

"There was no dispute as to the fact that the defendant executed the note and delivered it to Rice. On the trial in the court below two defenses were relied upon to defeat the action: (1) That after the note had been delivered by the defendant to Rice, it had been altered without his knowledge or consent by adding thereto the name of N. Fredericks as an attesting witness to the note; and, (2) that the note was fraudulently obtained from the defendant without any consideration therefor.

"Upon the first point the evidence tended strongly to show that when the note was executed and delivered by the defendant to Rice, N. Fredericks' name was not placed on the same as an attesting witness, but that he was present when the note was made and delivered by the defendant to Rice. When the note was produced in evidence, Fredericks' name was written thereon as an attesting witness; when it

was placed there does not appear. The proof shows that it was done without the knowledge or consent of the defendant.

"Upon the second ground of defense the defendant testified that the note was given substantially under the following circumstances: 'About a week before the note in suit was given I was traveling from my home in Jefferson county to Fort Atkinson, in said county, and met a man on the road who was a stranger to me, and whose name I did not then, and do not now, know. This man got into conversation with me, and proposed to sell me a preparation for painting and repairing roofs. I at first refused to purchase or have anything to do with it. The stranger then asked me if I would not put it on my roofs if he would send me a quantity free of charge, so that, when the company or their employees came around to do business another season, there would be something to represent their material. I finally told him I would. He then asked where he should send it, and I told him to Fort Atkinson. After some further conversation as to how it should be used, I told him I would put it on, provided he would send it as directed, and he said he would send me ten gallons. I was to pay nothing for it. He said he would send it. He then presented me a card and asked me to put my name on it. I could not read the card as it was rather small print, and I had not my spectacles with me. He read it over and explained it to me. He said that there was ordered on the card ten gallons. The material was to come from the New York Roofing Company. He said he was the agent for the company. There were to be no charges whatever; the only expense to me was to put it on. He read, or pretended to read, from the card "to send *George J. Green* ten gallons of this preparation." Don't remember the name he called it. There was no price stated, and he stated there was to be no charge. After signing the card we separated. About

a week after this, Rice, the person to whom the note was given, called upon me, and presented himself as an attorney, and brought a bill, as he represented it, from this roofing company, which he claimed to represent, for two casks of fifty gallons each. The whole bill amounted to $200, or $2 per gallon, and he insisted on my paying the whole bill, $200. He claimed to have a bill of lading for the two casks showing that they were at the depot at Fort Atkinson. The bill he presented was the card I had signed on the road, and purported to be an order for one hundred gallons of the material at $2 per gallon, instead of an order for ten gallons without any charge to me. At first I refused to pay any part of the bill, as I had not ordered it, and would have nothing to do with it. Rice then threatened to sue me immediately unless I paid it or gave my note. Said he had forced others to pay similar claims, and if I did not settle he would bring suit at once; that he would bring suit against me away from home, and it would cost me a good deal of trouble. He finally agreed to take my note for $134.50, and after being threatened with suit if I did not settle, I gave the note for $134.50, which is the note upon which the action was brought. He gave me what purported to be a bill of lading for two casks of the roofing material at Fort Atkinson. I never called for the two casks, and do not know whether they were ever delivered at Fort Atkinson for me or not; never called for it and never have had any of it.'

" There was other evidence in the case, but the foregoing is sufficient to show the application of the instructions of the learned circuit judge to the jury upon the trial.

" Upon the first point, as to the alteration of the note, the learned circuit judge instructed the jury as follows:

" 'It is claimed by the defendant that the note in suit has been altered since it was made and executed by the defendant, by one N. Fredericks affixing his name as a witness to the same without the consent or knowledge of the defendant, and that the note in consequence is void.

" 'Upon this point I instruct you that, if you find and believe from the evidence that George H. Rice, the payee of this note, or any other holder of the same, did, without the knowledge, consent, or request of the defendant, fraudulently, and with a view to gain some improper advantage, procure Mr. N. Fredericks to affix his name to the note in question as a subscribing witness to the same after the same was made, executed, and delivered to Rice by the defendant, then the affixing such name of Fredericks to the note, under the circumstances, constitutes a material alteration of the same — rendering it void in Rice's hands, as well as in the hands of the plaintiff, and your verdict must be for the defendant.

" 'But if you find from the evidence that N. Fredericks was present when the defendant signed his name to the note, and was knowing of the fact, although he was in an adjacent room and did not in fact see him, the defendant, sign it, and he, Fredericks, afterwards, at the request of Rice, the payee, made in good faith, and with no fraudulent intent, and with no view to gain any improper advantage thereby, fixed his name to the note as a witness to the same, even without the knowledge of the defendant, this would not constitute a material alteration of the note, and would not render the note void.'

" The plaintiff excepted to the second paragraph of the instructions above quoted, and upon this appeal assigns as error the giving of said instructions."

[Upon the second ground of defense the court instructed the jury, among other things, as follows:

" There is another rule of law, equally well established, that in the cases where there is fraud practiced upon the maker of a note, or very strong suspicion of fraud made by the defendant upon the trial, then the holder of a promissory note who sues for its recovery must show that he received it before maturity and for a valuable consideration,

otherwise, if he don't show that, then the defendant can make his full defense when he has once shown that a gross fraud has been practiced upon him in obtaining the note. It is incumbent then, upon the holder of a note to show that he took it before due, before it became due, for a valuable consideration. If he does show that, even after the defendant shows that he has been defrauded, then the burden of proof shifts again, and the defendant, in order to make his defense must show that the plaintiff had notice of the fraud before he took the note, and that fact being shown, he can make any defense he might make against the original payee."

There was a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff appealed.]

*W. H. Rogers*, for the appellant.

*L. B. Caswell*, for the respondent, argued, among other things, that the charge of the court as to the burden of proof was correct. It being shown that the note had its origin in fraud, the burden was upon the plaintiff to show that he was a *bona fide* holder. *Morton v. Rogers*, 14 Wend. 582–3; *Reese v. L., L. & G. Ins. Co.* 39 Wis. 520; *Smith v. Sac Co.* 11 Wall. 139; *Catlin v. Hansen*, 1 Duer, 309; *Hart v. Potter*, 4 id. 458; 5 id. 463; *Bailey v. Bidwell*, 13 Mees. & W. 76; *Sistermans v. Field*, 9 Gray, 331; *Perrin v. Noyes*, 39 Me. 384; *Paton v. Coit*, 5 Mich. 505. The addition of the witness rendered the note void. *Marshall v. Gougler*, 10 Serg. & R. 164; *Brackett v. Mountfort*, 11 Me. 115; *Thornton v. Appleton*, 29 id. 298; *Homer v. Wallis*, 11 Mass. 309; *Smith v. Dunham*, 8 Pick. 246; *Adams v. Frye*, 3 Met. 103; *Sharpe v. Bagwell*, 1 Devereux Eq. 114.

TAYLOR, J.   After a careful consideration of the authorities and the reasons for holding that alterations of written contracts, after they are executed, destroy such contracts as to parties not assenting to such alterations, we are of the

opinion that the instruction excepted to was erroneous and should not have been given.

The old rule of law in England that any alteration, whether material or immaterial, and whether made by a party interested in the contract or by a stranger, rendered the contract void, was long since abandoned; and the reasonable rule has now become firmly established that an alteration of a contract which will render it void must be made by a party thereto or with his knowledge or consent; and, further, the alteration must be material; that is, the alteration must in some way change the legal effect thereof as between the parties thereto. The insertion or addition of words in or to a contract, or the erasing of words therefrom, which do not change the legal effect thereof in any respect, does not render the contract void, and is an immaterial alteration. *Williams v. Starr*, 5 Wis. 534; *Schwalm v. McIntyre*, 17 Wis. 240; *Matteson v. Ellsworth*, 33 Wis. 488; *North v. Henneberry*, 44 Wis. 306, 319, 320; *Krouskop v. Shontz*, 51 Wis. 204, 206; *Palmer v. Largent*, 5 Neb. 223; *Aldous v. Cornwall*, 9 Best & S. 607; *Marson v. Petit*, 1 Camp. 82; *Trapp v. Spearman*, 3 Esp. 57; *Sanderson v. Symonds*, 1 Brod. & B. 426; *S. C.* 4 Moore, 42; *Catton v. Simpson*, 8 Ad. & El. 136; *Gardner v. Walsh*, 5 El. & Bl. 83; *Truett v. Wainwright*, 4 Gilman, 411; 2 Parsons on Cont. (6th ed.), 718–720; *Granite R. Co. v. Bacon*, 15 Pick. 239; *Langdon v. Paul*, 20 Vt. 217; *Huntington v. Finch*, 3 Ohio St. 445; *Nichols v. Johnson*, 10 Conn. 192; *Humphreys v. Crane*, 5 Cal. 173.

The affixing of the name of Fredericks as an attesting witness to the note in question does not change the liability of the maker thereof in any respect. It has no effect in extending his liability under the statute of limitations, nor does it under our laws facilitate or interfere in any way with its proof. Under our law the production of the note proves its execution, unless the signature be first denied

under oath by the maker. When there is no dispute as to the genuineness of the maker's signature, and therefore no necessity for the person claiming under it making proof of its execution, the fact that the note has or has not an attesting witness is wholly immaterial.

The possibility that the maker of the note and the attesting witness might both die before an action was brought upon it, and in such case the execution of the note might be proved by proving the handwriting of the attesting witness, is too remote and uncertain to be invoked for the purpose of basing a claim that the addition of such attesting witness is a material alteration of the contract. It seems to me the fact that a person who affixes his name as an attesting witness to a contract, when he has not witnessed its execution, cannot, even in the matter of proof of the instrument, be of any effect under any circumstances; for when it is made to appear that the name was so affixed, or, in other words, when the claimed alteration is proved, the party whose name has been affixed as an attesting witness is no longer such witness, and consequently the proof of his handwriting would be no proof of the execution of the contract.

. If the alteration be wholly immaterial, and in no way changes the liability of the maker of the note, it seems to us wholly immaterial with what intent such alteration was in fact made. The cases cited by the learned counsel for the respondent from Massachusetts and Maine sustaining the correctness of the instruction — viz., *Brackett v. Mountfort*, 11 Me. 115; *Thornton v. Appleton*, 29 Me. 298; *Homer v. Wallis*, 11 Mass. 310; and *Smith v. Dunham*, 8 Pick. 246 — were all cases where the name of an attesting witness had been added to a promissory note. In these states, when a note is attested by a witness, it extends the liability of the maker under the statute of limitations, and so in fact changes to some extent the nature of the contract and

enlarges its obligation in the law. In this state there is no such law, and consequently no enlargement of the obligation of the contract by reason of the fact that the note appears to be witnessed. The case of *Adams v. Frye*, 3 Met. 103, was an action upon a sealed bond. The case of *Marshall v. Gougler*, 10 Serg. & R. 164, was an action on a sealed note. Both cases seem to sustain the contention of the respondent and the correctness of the instruction given by the circuit court judge, and may have some weight in those states where the mere production of the note or bond does not prove its execution, and the adding the name of an attesting witness might, therefore, under some circumstances, be an advantage to the holder of the note or bond, and a disadvantage to the maker. Under the laws of this state, we can see no advantage to be gained by placing the name of an attesting witness to a note in favor of the holder of the note, and no disadvantage to the maker, and can conceive of no reason, therefore, why it should render the note void.

We cannot consider the fact that it is possible that an action might be brought upon this note in a state where the law enlarges the statute of limitations because the note is signed by an attesting witness. We can only judge of the materiality of the claimed alteration of the note by the application of our own laws. If the alteration be immaterial under the laws of this state, it cannot affect the rights of the parties in our courts because, in an action brought upon the note in some other state, the question of the alleged alteration might be adjudged a material alteration under the laws of that state, and possibly a different decision might be had. With that question this court has no concern.

The instructions of the learned circuit judge upon the second ground of defense were correct.

The evidence tends strongly to show that the pretended

claim against the defendant was a fraudulent one, having no element of justice or right in it. We think, upon the evidence, Rice, the man to whom the note was given, must be presumed to have known the fraudulent nature of the claim he made on the defendant, and that the giving of the note under the circumstances was not a compromise of an honest claim on the part of Rice, so as to bind him, but that he may set up the fraudulent nature of the original claim in an action upon the note by Rice, or any other person who is not a *bona fide* holder of the note for value before due. Had the defendant, after giving the note, taken possession of the two casks of paint, there would be strong ground for holding that he had thereby waived any right to set up the original fraud as a defense to the note; but the evidence shows that he did not do so. He may therefore avoid the note on the ground that the acts of Rice in obtaining it were a continuation of the original fraud of the man to whom the defendant gave the order. The transaction cannot be sustained on the theory that the claimed settlement between Rice and the defendant was the compromise of an honest claim made by Rice. See *Kercheval v. Doty*, 31 Wis. 476, 486. In this case Chief Justice Dixon says: "A mere false claim,— a sham one, — set up without any colorable pretense or plausible foundation, might not come within the terms or definition of a compromise, and might not sustain it. Characterized by bad faith, the preferring of such a claim would itself be a fraud, and concessions made or rights yielded on the strength of it would not be lost nor the settlement be a bar." Again, he says: "Fraud, it is said, will vitiate everything, and, no doubt, if shown, would vitiate a settlement." Wharton, in his work on the Law of Contracts, in speaking of the sufficiency of a forbearance to sue as a consideration for a promise to pay the claim, or some part thereof, says: "The fact that the suit is not well founded makes no difference if it has a show

of title, though it is otherwise in cases of fraud and in cases where the claim to be forborne is utterly destitute of support." 1 Wharton on Cont. § 532, and note. See, also, on this point, *Kidder v. Blake*, 45 N. H. 530; *Pitkin v. Noyes*, 48 N. H. 294, 304; *Nelson v. Serle*, 4 Mees. & W. 795.

There was sufficient proof given on the part of the defendant of the fraudulent nature of the claim made against him upon the note to go to the jury upon that question, and so to shift the burden of proof upon the plaintiff to show that he was a *bona fide* purchaser of the note for value before it became due; and, in the absence of any proof on his part on that point, if the jury found the fraud, the verdict would necessarily be for the defendant.

Because the learned circuit judge misdirected the jury as to the effect of placing the name of Fredericks on the note as an attesting witness, and it is therefore impossible for this court to determine whether the verdict of the jury was based upon the ground that the note was void for that reason or because of the fraud in the transaction between the defendant and Rice, the payee of the note, the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.