Hodge and another, Appellants, vs. Smith and others, Respondents.

*December 5, 1906—January 8, 1907.*

*Appeal and error: Findings of fact, when disturbed: Trial: Pleading and proof: Variance: Bills and notes: Conditional execution and delivery: Fraud: Parol evidence: Holder in due course: Defective title: Payment of consideration: Notice: Evidence: Burden of proof.*

1. In determining on appeal whether the trial court erred in holding that any particular issuable fact or facts were established without room for reasonable minds to reasonably differ in respect thereto the decision below should not be disturbed unless it clearly appears to be wrong.

2. If a material allegation of the complaint is not established in the exact detail of the charge but is as to the substance thereof the variance is not material.

3. If a person secures signatures to a note under a promise that the paper shall not be regarded delivered as a binding obligation till others, specified by name or as to numbers, shall have signed and then secures the unconditional signatures of part only of such others, keeping silent as to the conditional character of the former signatures, the latter are to be regarded as having been obtained by fraud.

4. If a promissory note, in form, is delivered by the maker to the payee, the act being accompanied by a verbal agreement that the instrument shall not take effect till some specified condition shall have been performed, as that other persons specified by name or number shall have signed, the paper, as between the original parties, will have no validity till the condition shall have been satisfied.

5. In the circumstances last stated, proof of the contemporaneous verbal agreement does not violate the rule that a written instrument cannot be varied by proof of a verbal promise, since such proof only goes to the question of whether the paper ever had vitality as a contract.

6. In the circumstances above stated, if the condition is that certain other signatures shall be obtained, only part of which are thereafter secured, they signing unconditionally and without being informed of their co-makers having signed conditionally and they are prejudiced thereby, in that the paper does not take effect as to such conditional makers, they may defend on

the ground of fraud, while such co-makers may defend on the ground of the paper never having been delivered, so long as the same remains in the hands of the original holder or any subsequent holder not having obtained the same in due course.

7. A holder of commercial paper in due course is one who takes the same when (a) it is complete and regular upon its face; (b) he became the holder of the paper before it was overdue and without notice that it had been previously dishonored, if such was the fact; (c) he took it in good faith and for value; (d) at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it; and (e) he took it in the usual course of business.

8. The transferee of commercial paper is not the holder thereof in due course, unless he has paid the full amount agreed to be paid therefor without notice of any infirmity in the instrument or in the title of the transferrer,—except to the amount thereof so paid.

9. The title of a person who negotiates commercial paper is defective when he shall have obtained the instrument or any signature thereto by fraud or negotiated it in breach of faith or fraudulently.

10. The holder of commercial paper is *prima facie* presumed to be a holder in due course, but in case of its appearing that the title of any person who negotiated the paper was defective then the holder in order to recover must show that he or some person under whom he claims acquired the title as a holder in due course.

11. In the circumstances last stated, proof that a full consideration was paid for the paper *prima facie* establishes that it was taken in due course.

12. Proof that when the paper was taken the consideration was placed to the credit of the seller on the books of the purchaser subject to the former's order, does not constitute payment.

13. Ordinarily in the circumstances stated in the last paragraph the burden of proof is on the defendant to show that the debt represented by the credit was not paid, but in the circumstances stated in number 10 the burden is on the purchaser.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Pepin county: E. W. HELMS, Circuit Judge. *Affirmed.*

Action to recover on three promissory notes dated February 18, 1903, one for $934, and two for $933 each, made by the

defendants, payable to the order of Robert Burgess & Son, with six per cent. interest per annum payable annually, the first one being made payable July 1, 1904, the second July 1, 1905, and the third July 1, 1906. Each note provided that in case of any delinquency to meet it as to principal or interest the whole should become immediately due. The complaint contained a cause of action stated in the usual form as to each note, the two causes of action as to the notes not due on their face containing sufficient allegations to show that they were due under the condition before mentioned. Defendants *Smith, White, Andrew Lark, Stranberg, Anderson,* and *A. P. Lark* answered jointly. Defendants *Dunn, Engel, Heitman,* and *V. Brownlee* answered jointly. Defendants *Smith, Andrew Lark,* and *A. P. Lark* joined in an amended answer, defendant *Frank* answered separately, and the defendant *Stranberg* interposed an amended answer. By these several answers, as to all defendants, issue was taken on the allegations of the complaint as to plaintiffs having become owners of the notes for value in due course before due, and as to whether the second and third notes became due before the commencement of the action. A defense was pleaded as to all defendants, that the notes were given for a stallion sold with certain specified warranties and representations, among them being one that the animal was but three years of age, and that such representations were false. Further defense was pleaded that each and all defendants signed the notes under an agreement that they were to be signed by Otto Jahnke and R. J. Hall and were not to take effect till so signed, and that neither of such persons did so. Defendants *Dunn, Engel, Heitman,* and *Brownlee* pleaded that they signed the notes with the understanding that they should not be held liable; that their signatures were wanted only to make it appear that they were actual purchasers of shares in the horse. Defendant *Frank* answered specially that he never executed the note. Defendant *Stranberg* answered specially that he was induced to sign

through threats, fraud, and duress practiced upon him by the agent for the sellers of the horse; that he signed a book agreeing to take a share in the animal and to sign the note, but that he did not recollect it when asked to sign the note; that his name was placed on the book when he was so intoxicated that he did not know what he was doing; that his signature was subsequently exhibited to him and he was threatened with being sent to state's prison if he did not sign the notes, and that being thereby frightened and through his inexperience, being ignorant of his rights, he signed the notes.

At the close of the evidence the court directed a verdict in favor of the plaintiffs against defendants *Smith, Andrew Lark,* and *A. P. Lark* as to the first note, and a verdict in the latter's favor as to the other notes, and otherwise submitted the cause to the jury, resulting in a verdict in plaintiffs' favor for the full amount claimed. Thereafter upon due application the verdict directed in plaintiffs' favor was set aside and the verdict otherwise rendered in plaintiffs' favor was also set aside, as said by the court, "for errors of the court in so directing a verdict and in submitting certain issues to the jury and instructions thereon." Thereupon, on motion of the defendants, judgment was ordered in their favor and was accordingly rendered.

For the appellants there was a brief by *Barnes & Magoon,* attorneys, and *C. A. Ingram,* of counsel, and oral argument by *R. M. Barnes.*

For the respondents there was a brief by *W. C. Owen* and *W. E. Plummer,* and oral argument by *Mr. Plummer.*

MARSHALL, J. If the grounds upon which the learned circuit court rendered judgment in favor of respondents were legitimate, then, manifestly, error of law was committed in submitting the cause to the jury, and in the instructions. Therefore, we will not give consideration to the subject of whether error was committed in setting aside the verdict, un-

less it shall appear that the subsequent action complained of
was erroneous.

The bases of the order for judgment, notwithstanding the
verdict, so far as need to be noticed, appear to be: (a) The
evidence is undisputed that the vendors of the horse, by their
agent, falsely represented the animal's age; (b) The evidence
is likewise conclusive that such vendors obtained the signa-
tures of all of the respondents to the notes upon condition
that in addition to such signatures Otto Jahnke and R. J.
Hall should sign, making the full number of share-takers in
the enterprise fourteen, so that each holder of a share would
contribute in the ultimate $200 only, and that the papers were
not so signed; (c) The evidence is likewise undisputed that
while the notes were sold to appellants before due they were
bankers, and instead of parting with the agreed consideration
at the time of the purchase it was placed to the credit of the
sellers in an account at such bank subject to check, and there-
was no proof that the amount thereof, or any of it, was
checked out before the commencement of the action.

The first ground requires but a passing notice. There was
no claim in the complaint that the contract of purchase was
rescinded for misrepresentation or otherwise. The defense
was not based on rescission, nor was any claim made for dam-
ages because of the horse not being as represented, nor were
any damages proved. So no feature of the complaint on that
score should have been treated as of importance in submit-
ting the cause to the jury, or in determining after verdict
the proper judgment to be rendered.

In deciding the question of whether error was committed
in holding that the evidence conclusively established an un-
derstanding between appellants' agent, who took the notes, and
respondents that fourteen share-takers, including Otto Jahnke
and R. J. Hall, should sign the notes before they should be
regarded as binding, the rule must be applied that the decis-
ion of the trial court on such a subject must prevail on appeal,.

unless it clearly appears to be wrong. There is no room for reasonable controversy but that the plan for selling the horse, well understood by every one who participated in the enterprise, was that there should be takers of fourteen shares at $200 each and that such number, as was supposed by those who participated, was secured and that it included Jahnke and Hall. The bill of sale of the horse was made to the fourteen persons by name. There was an express promise made to a large proportion of the signers, individually, that unless the whole number signed "the note should be no good," as some of the witnesses expressed it, or "there would be no sale," according to the expressions of others, or "the note would be no good or void," as was said by others.

Expressions of the sort indicated were made to at least seven of the signers. Further, by the uncontradicted evidence, at a meeting of share-takers, when nine were present and several signed the notes, the promise was made that there should be no sale unless the full number of signers was obtained. Two of those to whom a similar promise was individually made were not at the meeting, so there were eleven of the twelve signers who received the pledge. All were told that there were to be fourteen signers.

Such are our conclusions, from a careful study of the record. It seems sufficient to state them without referring to the evidence in detail. True, as counsel for appellants contend, the answers on this point were to the effect that the understanding was that Jahnke and Hall should sign to make up the full number of share-takers, and several of the witnesses who testified to the promise being made that there should be such full number did not claim that the names of Jahnke and Hall were mentioned, but the record shows that they were recognized as share-takers in the bill of sale, and, therefore, it must have been understood by all that they were to sign the notes. But let that be as it may, the real substance of the defense pleaded on this branch of the case is that it was

represented to those who signed the notes, as an inducement for them to do so, that there were to be takers of the full fourteen shares at $200 per share, and that fourteen persons should sign the papers, or that they should not take effect as binding obligations. On all the evidence, direct and circumstantial, standing as it does entirely uncontradicted, we do not see any warrant for holding that the trial court was clearly wrong at this point. The concluding act of giving the bill of sale with the fourteen names therein as vendees together with the other evidence would seem to leave no reasonable doubt on the question. That bill of sale is as follows:

"Know all men by these presents: That we have this day sold to *W. H. Dunn, A. P. Lark, Bert Engel,* Otto *Jahnke, John Heitman, Herman Frank, Jas. A. White, Clarence Fayerweather, Andrew Lark, J. O. Stranberg, John Smith, V. Brownlee, Oscar Anderson,* R. J. Hall, the imported Belgian stallion named Vigilant 1143 (21,674) in consideration of the sum of $2,800, receipt whereof is hereby acknowledged."

That bears date three days after the date of the note. It appears that the persons who failed to sign the notes signed a preliminary agreement to become parties thereto.

If we were to hold that the evidence does not conclusively show that all who signed the papers did so relying on an understanding that they should not be binding until the full number signed, still the situation would remain that many did sign with such understanding, and that those who did not, joined without knowing that their co-signers were only conditional makers. As to the latter the conclusion seems irresistible that they were induced to become parties to the notes by fraud. The natural, the necessary, inference one would draw upon unconditionally signing a note previously signed by others and to be still further signed, if not informed to the contrary, would be that all are to be equally bound, especially when the notes are in a form creating a joint and several liability. A person securing such unconditional signatures and

keeping silent in respect thereto while inducing others to sign
would be guilty of perpetrating a fraud upon the latter.
Therefore, in any event, all of the defendants had a good de-
fense to the notes so long as they remained in the hands of
the first holders. *Luetzke v. Roberts, ante,* p. 97, 109 N.
W. 949.

It is familiar law, notwithstanding some conflict in the au-
thorities, that a person may manually deliver an instrument,
though it be in the form of commercial paper, to another, on
its face containing a binding obligation *in præsenti* of such
person to such other, with a contemporaneous verbal agree-
ment that it shall not take effect until the happening of some·
specified event, and that the paper as between the parties will
have no validity as a binding contract till the condition shall
have been satisfied; and that proof of such condition does not
violate the rule that a written instrument cannot be varied
by a contemporaneous parol agreement; that such evidence
only goes to show that the instrument never had vitality as a
contract. *Nutting v. Minn. F. Ins. Co.* 98 Wis. 26, 73 N. W.
432; *Thorne v. Ætna Ins. Co.* 102 Wis. 593, 78 N. W. 920;
*State ex rel. Jones v. Ch. of Comm.* 121 Wis. 110, 98 N. W.
930; *Golden v. Meier,* 129 Wis. 14, 107 N. W. 27; *Ware v.*
*Smith,* 62 Iowa, 159, 17 N. W. 459; *Belleville Sav. Bank v.*
*Bornman,* 124 Ill. 200, 16 N. E. 210; *Merchants' Exch.*
*Bank v. Luckow,* 37 Minn. 542, 35 N. W. 434; *Burke v.*
*Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816.

The authorities are not all in harmony with the foregoing.
*Dodd v. Dunne,* 71 Wis. 578, 37 N. W. 430, is an example,
but by the Negotiable Instrument Law, sec. 1675—16, ch.
356, Laws of 1899, the principle thereof was incorporated
into the written law of this state in these words:

"Every contract on a negotiable instrument is incomplete·
and revocable until delivery of the·instrument for the purpose
of giving effect thereto. As between immediate parties, and
as regards a remote party other than a holder in due course,

the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed."

The next important question is: Did appellants become the owners of the notes in due course? We need not discuss the subject at any considerable length, of what constitutes a holder of commercial paper in due course, since the written law covers the matter. Sec. 1676—22 of the Negotiable Instrument statute provides that:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

"5. That he took it in the usual course of business."

It will be observed that, in harmony with elementary principles, one of the important incidents of the transfer of negotiable paper, essential to the transferee becoming a holder in due course, is the actual payment therefor. So what constitutes payment, when there is not an actual transition of the money equivalent from the purchaser of the paper to the seller at the time of the transfer, has often been a subject of consideration. Such circumstances as we have here, that is the sale of a note before due and placing the consideration to the credit of the vendor upon the books of the purchaser subject to the former's check, have been held not to be a taking for

value so as to render the new holder a purchaser in due course, except to the extent of the money actually drawn and charged against such credit. This court so held in *Manufacturers' Nat. Bank v. Newell,* 71 Wis. 309, 37 N. W. 420. The principle there and in many cases declared was incorporated into the Negotiable Instrument Law at sec. 1676—24 in these words:

"Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid therefor the full amount agreed to be paid he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

Since in this case the evidence conclusively shows that when appellants took the notes from the original holder they placed the consideration to the credit of the latter, and there is no proof that the credit was thereafter exhausted in whole or in part by payment of money on account thereof, there was a failure of proof that appellants became holders of the papers in due course so as to cure the infirmities therein, unless the mere production thereof was sufficient to make out a *prima facie* case in that regard. On that the learned trial court decided in the negative, and seems in so doing to have followed the written law, as indicated by sec. 1676—25 of the Negotiable Instrument Law, which covers the subject in these words:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtains the instrument, or any signature thereto, by fraud, . . . or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

So as we have seen the title of the original holders of the papers in question was defective. They negotiated such papers in bad faith as to all who signed conditionally, and as to others, if any there were, their signatures were obtained by fraud. The purchaser of commercial paper under such circumstances occupies a materially different position, when he

attempts to judicially enforce it, from that occupied by one who has taken a note as indorsee, which in the hands of the original holder is subject to a defense not based on the title of the latter being defective or his signature having been obtained by fraud. Ordinarily the second holder is presumed, in the absence of evidence to the contrary, to have taken the paper in due course and before maturity. But the rule in this state and generally, independent of the written law, is that where circumstances exist rendering the title of the original holder defective, or showing fraud in obtaining the paper, the burden is on the second holder to go further than to merely produce such paper. He cannot rely upon the mere presumption which obtains, generally, but must carry the burden of showing that he is a holder in due course by proving facts sufficient to establish it. *Fuller v. Green,* 64 Wis. 159, 24 N. W. 907.

The reason for the foregoing rule, as indicated by judicial authorities, is fairly stated in 4 Am. & Eng. Ency. of Law (2d ed.) at page 323, to the effect that proof of fraud suggests that the party thereto who formerly held the paper and is precluded from recovering thereon himself, transferred it to another to recover for his use, and the latter must overcome the presumption in that regard. It is further said there with supporting authorities:

"It is well settled that the holder does not meet the burden cast upon him by proof of value merely, but he must also prove . . . that he gave value within the conditions which the law prescribes to establish the character of a *bona fide* holder; or, as it is sometimes expressed, he must show all the circumstances under which he took the paper, with a view to determining his good faith as a holder." "But . . . it has been held that proof that the holder before maturity paid full value for the instrument sued upon" makes out a *prima facie* case of *"bona fides." Market & F. Nat. Bank v. Sargeant,* 85 Me. 349, 27 Atl. 192; *Henry v. Sneed,* 99 Mo. 407, 422, 12 S. W. 663.

That seems reasonable and we adopt it, although it is not universally supported by judicial authority. Of course, proof of payment is not conclusive, it only makes out, as indicated, a *prima facie* case; one subject to be rebutted by the adverse party. The basic principle of the law, as thus declared by the courts, was incorporated into the Negotiable Instrument Law at sec. 1676—29, in these words:

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

Counsel for appellants freely concede that the mere crediting of the consideration agreed upon, to the seller of commercial paper, as was done in this case, does not constitute payment therefor, but it is insisted that the burden in such circumstances is on the respondent to show that the credit was not balanced by payment. Not only the judicial authorities, as we have seen, are to the contrary, but the written law is also. Counsel rely confidently on *Warman v. First Nat. Bank,* 185 Ill. 60, 57 N. E. 6, but as we read that case it does not bear out counsel's contention. The note there dealt with was subject in the hands of the original holder to an ordinary defense, not one based on the title of such holder being defective, or on fraud in obtaining the paper, and so governed by the principle incorporated into sec. 1676—29 of the Negotiable Instrument statute.

What has been said renders all other questions discussed in the briefs of counsel immaterial. The conclusion reached by the learned circuit court that the title of the original holders of the notes was defective and that such condition cast upon the appellants the burden of proving that they became holders of the papers in due course, which included proof that they actually paid therefor, not merely entered upon the bank books a credit for the agreed consideration, and that, there being

no proof produced on that subject, the evidence failed to establish the causes of action pleaded, seems to be fully warranted.

*By the Court.*—The judgment is affirmed.