ROTHSTEIN *v.* WEEKS.

1. VENDOR AND PURCHASER—CONTRACTS—MONEY PAID UNDER VOID EXECUTORY CONTRACT MAY BE RECOVERED.

Where a contract purported the purchase of real estate by a husband and wife, they to pay therefor by conveying a homestead held by them by the entireties and the balance in money, and the husband signed and paid down $500, but the wife refused to sign and the contract was therefore never executed, the husband is entitled to recover the down payment, in an action therefor, as for money paid on a void contract, and defendant's claim that the contract is binding as to the husband cannot be sustained, since all parties understood that the contract was a joint one and required the wife's signature to validate it.

2. EVIDENCE—CONTRACTS—PAROL AGREEMENT TO SHOW THAT OTHERS WERE TO SIGN CONTRACT ADMISSIBLE.

One who executes a contract may protect himself from liability by a distinct agreement that it shall not become operative, or recognized as delivered, until other parties execute it also, and parol proof of such agreement is not objectionable as tending to vary the terms of a written agreement, as it only goes to show that, whatever its terms, the instrument never had validity as a contract.

3. ASSUMPSIT—MONEY HAD AND RECEIVED—MONEY PAID ON VOID CONTRACT RECOVERABLE.

Money paid on a void executory contract may be recovered under the common count for money had and received.

4. CONTRACTS—JOINT CONTRACTS VOID UNTIL SIGNED BY ALL.

Where the manifest intent, as expressed in the wording of a contract, and the conceded facts in relation thereto, show that there was a clearly implied condition that it was to be executed by others named in it, in order to be binding, until it was executed by all it remained inchoate, incomplete, undelivered, and unenforceable as to all.

Error to Wayne; Richter (Theodore J.), J.    Sub-

On general rule that parol evidence is not admissible to vary, add to, or alter a written contract, see note in 17 L. R. A. 270.

mitted January 30, 1923.     (Docket No. 43.)     Decided October 1, 1923.

Assumpsit in justice's court by Samuel E. Rothstein against Ira W. Weeks for money had and received. There was judgment for plaintiff, and defendant appealed to the circuit court.     Judgment for plaintiff on a directed verdict.     Defendant brings error.     Affirmed.

*Hugh C. Chedester,* for appellant.

*Maxwell S. Friedland,* for appellee.

STEERE, J.     This action was brought to recover from defendant $500 paid him by plaintiff, tentatively as the latter claimed, on a contract entered into by them for a so-called exchange of real estate which was not consummated.     The parties to the litigation are married men.     Plaintiff and his wife owned as tenants by entirety a two-family flat located on Clairmont avenue in the city of Detroit, occupying the lower flat with their family as their home.     Defendant and his wife owned as tenants by entirety a six-family apartment brick building located on Alger avenue and a four-family apartment located on Highland avenue in said city.     Negotiations leading up to the written contract involved here were conducted between the two men in plaintiff's place of business and were somewhat protracted, but on reaching an agreement they went without their wives to both of their attorneys to have it closed.     The agreement as related by them was first drawn up by plaintiff's attorney and submitted to defendant's attorney who made a few corrections, after which they signed it in duplicate and plaintiff deposited with defendant $500, as he had agreed to do before leaving his store, on defendant's suggestion that he take that amount along "to close

up the deal." Of this plaintiff was allowed to testify against objection that he at first protested against putting up the $500 because his wife had not signed, and asked defendant if he should pay $500 and his wife was not satisfied to go through with the proposition would he get his $500 back, "and he said that he was more than good for that. Mr. Weeks agreed to return it. * * * He said it would be all right, if she did not sign there would be no deal."

Contemporaneous with their signing the agreement in duplicate each received a copy, agreeing to take it home for his wife's signature and exchange copies the next morning. Plaintiff's wife did not sign. He testified that he took the copy he retained home and requested her to do so, but she refused because she did not want to part with her home. Defendant's wife signed the copy he took, but when he appeared at plaintiff's store the next morning the latter told him his wife had refused to sign and demanded his money back "because he could not go through with the deal." Defendant had some papers with him, and replied he was going to have the abstracts brought down to date anyhow, as she might change her mind, and refused to pay back the $500. In a later interview at which plaintiff's wife was present he would not comply with a request to return the deposit and plaintiff sued him for it in justice's court where he recovered a judgment for the $500. A re-trial in the Wayne county circuit court on defendant's appeal resulted in a judgment for the amount in plaintiff's favor on a directed verdict.

The two copies of the contract put in evidence by the parties bear their signatures, and are identical with the exception that the copy taken by defendant bears his wife's signature while plaintiff's is only signed by himself and defendant. It is undisputed that for some time before they signed the agreement defendant knew plaintiff and his wife owned the Clair-

mont property as tenants by entirety and lived there.

The contract is somewhat lengthy, with various provisions which need not be detailed.    Its introductory paragraph states that it is a—

"Memorandum of agreement, made this 26th day of September, 1921, by and between Ira W. Weeks and Lucy M. Weeks, his wife, of the city of Richmond, Michigan, parties of the first part, and Samuel E. Rothstein and Emma Rothstein, his wife, both of the city of Detroit, Wayne county, Michigan, parties of the second part."

Through all its provisions the obligations of this instrument are made by or to said "parties of the first part" and "parties of the second part."    The parties who signed the agreement for a so-called exchange were dealing in regard to property which neither had any authority to transfer or bind by contract.    They in effect contracted that the parties of the first part should sell their two pieces of real estate to the parties of the second part for $65,000 by two separate land contracts, "Union Trust Co. form," the Alger avenue brick apartment property for $45,000 and the Highland avenue apartment property for $20,000, for which the parties of the second part were, as a first payment, to convey to the parties of the first part a full title in fee to their Clairmont avenue property, subject to a mortgage of $4,900, for a credit of $13,100, with a cash payment of $2,400, making a total credit of $15,500, $5,500 to be applied on the Highland avenue contract and $10,000 on the Alger avenue contract, agreeing that by those contracts they would pay on the unpaid balance of $49,500 at least $145 per month, with interest on unpaid balances, and in addition $250 every six months for 5 years "the whole purchase price to be paid within ten (10) years or down to mortgage, when second parties will take deed and assume mortgage."    The two Union Trust Company

form land contracts from parties of the first part were to be executed contemporaneously with the full payment of $2,400 cash and execution of a deed by parties of the second part to parties of the first part for their Clairmont property.

At close of the testimony both parties requested a directed verdict. The justice's return shows plaintiff declared in assumpsit on the common counts and filed a bill of particulars for $500 paid defendant "on a void agreement for exchange of land," and retained by the latter "without consideration," while defendant pleaded the general issue and filed notice of recoupment, claiming $5,000 damages for breach of "the contract mentioned in plaintiff's claim filed herein."

The grounds of error argued by defendant were urged before the trial court in a motion for a new trial, which was denied. Those most stressed are denial of a motion for continuance based on the claim that defendant was too ill to attend the trial, admission of plaintiff's testimony that the payment to defendant of $500 was but a conditional deposit, because not specially pleaded, and is an attempt to change the terms of a written agreement, and the court erred in holding the contract void as between the parties, which is the paramount question in the case.

Defendant's contention is based upon the proposition that conceding specific performance of this contract cannot be specifically enforced and is void so far as title to the property and rights of plaintiff's wife are concerned, it is yet valid as against plaintiff himself in an action at law to recover damages from him sustained by reason of his individual breach of the contract. In support of this proposition defendant's counsel cites *Way* v. *Root*, 174 Mich. 418, and other analogous cases where the contract is individual and the party held liable obligates himself personally and alone as empowered to contract, while just the con-

trary is shown here.   Not only did defendant know the property plaintiff was negotiating to convey was held by plaintiff and wife as tenants by entirety, was their home, and without her signature no valid contract could be made by him in relation to it, but the instrument itself names them in all its various provisions as joint obligors and obligees throughout, nowhere obligating or even mentioning plaintiff separately.   While the homestead exemption standing alone might not furnish plaintiff immunity from liability for failure to fulfill an individual contract to convey as to that portion of the property not so exempt (*Dikeman* v. *Arnold*, 78 Mich. 455), the fact that a homestead was involved in connection with a tenancy by entirety emphasizes the significance of the plural number used in describing the parties of the second part.   This contract contains many mutual covenants, on each side a consideration for those of the other. The following conclusion in *Grefen* v. *Hubbard*, 112 Ill. App. 16, can appropriately be applied to this contract:

"It could not be performed by appellee only and it was not by its terms intended to be.   *   *   *   By reason of her (the wife's) failure or refusal to execute the contract, all the other parties alike, appellee, as well as appellant, were relieved from the obligation they had signed in the expectation that it was to be binding on all the parties named therein.   Covenants founded on mutuality of obligation and liability must be mutually binding upon the parties to them.   If, therefore, one of several parties to a deed *inter partes* founded on mutual covenants neglects to execute the deed, the contract is not binding on the others who have executed it."

In *Adler* v. *Katus*, 190 Mich. 86, an action was brought to recover a deposit paid under an agreement to which Peter Katus signed his own and his brother Charles J. Katus' name as vendors, but without authority from his brother to sign for him.   The defense

contended that the agreement was binding upon Peter in any event and should be treated as though it had not been executed by him in behalf of Charles at all. In reversing a judgment in favor of defendants this court said in discussing the agreement relied upon:

"If a promise to convey the land is to be implied from this memorandum, it is a promise which purports to have been made by Peter Katus and Charles J. Katus, jointly, and not by Peter Katus alone.   It acknowledges the receipt of the money by both, and implied a joint conveyance, if any.   Peter Katus does not agree to procure a conveyance from Charles, but the import of the writing is that Charles himself agrees to convey his interest.   Should we construe this as a contract by Peter alone, as vendor, we would be making for the parties a contract they never made for themselves.   So far as the memorandum shows, the plaintiff did not intend one which could not be specifically performed without the subsequent consent of Charles, nor did Peter intend to make one by which he bound himself, at his peril, to obtain a conveyance from Charles.   The agreement being void as to Charles, and not severable, is entirely void.   This case is ruled by *Kooman* v. *DeJonge*, 186 Mich. 292."

The law is well settled that one who executes a contract may protect himself from liability by a distinct agreement that it shall not become operative, or recognized as delivered, until other parties execute it also, and parol proof of such agreement is not objectionable as tending to vary the terms of a written agreement, as-it only goes to show that whatever its terms the instrument never had validity as a contract. *Dikeman* v. *Arnold, supra; Cleveland Refining Co.* v. *Dunning,* 115 Mich. 238; *Ada Dairy Ass'n* v. *Mears,* 123 Mich. 470; *Hodge* v. *Smith,* 130 Wis. 326 (110 N. W. 192).   Defendant further contends that such evidence was not admissible under plaintiff's pleadings as restricted by his bill of particulars which do not state that the money was by agreement paid conditionally.

This contract was yet entirely executory. Money paid on a void executory contract can be recovered under the common count for money had and received. *Kuchenmeister* v. *Dusza*, 218 Mich. 497. The bill of particulars filed in justice's court stated the amount paid, the contract it was paid on and that it was void, which was the cause of action to which his claim was limited. Why it was void was a matter of proof. No demand is shown to have been made by defendant for a more specific bill of particulars. On the previous trial in justice's court plaintiff testified as to a conditional payment of the money sought to be recovered. There could be no claim that defendant was taken by surprise as to it on re-trial in the circuit court.

But aside from the claim of an express agreement as to how that which was done should be construed, the manifest intent as expressed in the wording of the instrument itself, and conceded facts in relation to its subject-matter, place it within the class of contracts where each executes the agreement upon a clearly implied condition that it is to be executed by others named in it, and until executed by all it remains inchoate, incomplete, undelivered and unenforceable as to all. What the parties did on signing the duplicates in this case shows that they so understood and interpreted it. Each temporarily took possession of a copy, not as a final delivery of it to him, but for the purpose of securing his wife's signature to it and a final delivery of that copy to the other party the next day. No final, legal delivery in consummation of the contract as they understood and intended was ever made by or to either party.

The judgment will stand affirmed.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.